**Mignon Marie STONE, Plaintiff,**

v.

**Richard HOLZBERGER,
et al., Defendants.**

**No. C–1–90–181.**

United States District Court,
S.D. Ohio, W.D.

June 3, 1992.

**1330**

Frederick Mason Morgan, Jr., Montgomery, Rennie & Jonson, Cincinnati, OH, for plaintiff.

Edward Ronald Goldman, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, James Henry Scheper, Baden, Jones, Scheper & Crehan, James Elder Michael, Jr., Millikin & Fitton Law Firm, Hamilton, OH, Leo Joseph Breslin, Lindhorst & Dreidame, Charles Matthew Roesch, Dinsmore & Shohl, Cincinnati, OH, David Gerard Torchia, Tobias & Kraus, Cincinnati, OH, for defendants.

### ORDER

SPIEGEL, District Judge.

This matter is before the Court for consideration of eight separate motions. The Court conducted a hearing on these motions on April 30, 1992.

### BACKGROUND

In May, 1987, Mignon Stone became romantically involved with Larry Jones. Ms. Stone and Mr. Jones eventually took up residence together. In April, 1989, they rented two television sets and a video cassette recorder from Rent-A-Center. Two months later, Mr. Jones illegally sold the televisions.

In the early morning of October 24, 1989, Mr. Jones left a bar with a Butler County woman, Janavie Mills. Ms. Mills was reported missing later that day, and, approximately ten days later, her decayed corpse was found bearing the marks of approximately eighty stab wounds. The Butler County Sheriff's Department considered Larry Jones the prime suspect in Ms. Mills' murder.

Meanwhile, Ms. Stone believed that authorities were searching for Mr. Jones in connection with the stolen Rent-A-Center televisions. For several weeks, Ms. Stone and Mr. Jones moved around, staying at various places in Hamilton, Ohio and Northern Kentucky.

On Tuesday, October 31, 1989, Ms. Stone learned that Mr. Jones was sought in connection with Ms. Mills' disappearance (Ms. Mills' body had not yet been discovered). Ms. Stone further learned that authorities wished to interview her as well. On Wednesday, November 1, 1989, Ms. Stone contacted Glen Ebbing to arrange a meeting with Butler County Sheriff Richard Holzberger. Mr. Ebbing is Ms. Stone's step-father, a retired City of Hamilton detective, and a long-time friend of Butler County Prosecutor John Holcomb.

Mr. Ebbing arranged for Ms. Stone, Mr. Jones and Sheriff Holzberger to meet at the Ebbing home on November 1, 1989. Mr. Jones declined to attend the meeting, but Ms. Stone met with Sheriff Holzberger anyway. When Sheriff Holzberger questioned Ms. Stone, she initially denied knowing Mr. Jones' whereabouts, even though she had been with him less than an hour before the meeting. When Ms. Stone indi-

cated that she no longer wanted to speak to Sheriff Holzberger and that she wanted to leave, Sheriff Holzberger (assisted by Captain Richard Carpenter) arrested Ms. Stone. Ms. Stone was taken to the Butler County Jail and interrogated. She indicated that she did not wish to make a statement and was told she was under arrest as a material witness.

Ms. Stone remained in custody as a material witness without judicial review from the evening of November 1, 1989 until the late afternoon of November 6, 1989. On the afternoon of November 6, 1989, Ms. Stone was taken before Butler County Common Pleas Judge Moser. Judge Moser issued an "own recognizance" ("O.R.") bond permitting Ms. Stone's release.

Ms. Stone was escorted back to the Butler County Jail to retrieve her clothing and personal possessions. Ms. Stone identified a cocaine canister found at the murder scene as belonging to Mr. Jones. Apparently Sheriff Holzberger believed that Ms. Stone had not been completely candid during the six days of interrogation. He then contacted the prosecutor's office to see if he could continue to hold Ms. Stone as a material witness due to this allegedly new information. Prosecutor Holcomb informed the Sheriff that he could continue to hold Ms. Stone until the OR bond could be rescinded. By that time, it was late in the afternoon on November 6, 1989. The Butler County Court of Common Pleas was closed. Sheriff Holzberger directed his subordinates to retain Ms. Stone until court reconvened the next morning.

The next day, November 7, 1989, an assistant prosecutor engaged in an *ex parte, in camera* conference with Judge Moser. Ms. Stone was not present nor was she informed of the conference. As a result of that meeting, Judge Moser set aside the O.R. bond and issued a $50,000 surety bond. Ms. Stone was not served with the new order, nor was she informed of the $50,000 bond. Ms. Stone remained in custody at the Butler County Jail until November 20, 1989 (a total of nineteen days). She was paid the statutory rate of $25 per day. Larry Jones ultimately pled guilty to the murder of Janavie Mills.

On March 5, 1990, Ms. Stone initiated this action pursuant to 42 U.S.C. § 1983. She alleges various federal and state claims against Sheriff Holzberger, Richard Carpenter, Richard Sizemore, William Profitt and Terry Payer (collectively "the Sheriff's defendants"), Butler County Prosecutor John Holcomb, Butler County, Ohio, the City of Hamilton, Ohio, and Michael T. Gmoser, Esq. In addition, Prosecutor Holcomb filed a counter-claim alleging tortious interference with a business relationship.

On April 30, 1992, this Court heard oral arguments on eight motions currently pending in this matter. First, the City of Hamilton, Ohio filed a motion for summary judgment (doc. 58). At the hearing on April 30, 1992, the parties entered into a stipulation of dismissal of all claims against the City of Hamilton (doc. 155). Accordingly, the City of Hamilton's motion for summary judgment is hereby denied as moot.

Second, defendants Richard Holzberger, Richard Carpenter, Richard Sizemore, Charles Profitt and Terry Payer ("the Sheriff's defendants") filed a motion for summary judgment (doc. 60). The plaintiff responded in opposition to the motion (doc. 84 and doc. 89), and the Sheriff's defendants replied (doc. 104). For the reasons set forth below, the Sheriff's defendants' motion for summary judgment is hereby granted in part and denied in part.

Third, defendant Butler County, Ohio[1] filed a motion for summary judgment (doc. 65). The plaintiff responded (doc. 85), and Butler County replied (doc. 102). For the reasons set forth below, the motion for summary judgment on behalf of the Butler County Commissioners is hereby granted in part and denied in part.

---

1. The plaintiff erroneously named Butler County, Ohio as a defendant rather than the individual Butler County Commissioners in their official capacities. In this opinion, the Court grants the plaintiff's motion to amend her complaint to name the individual County Commissioners rather than Butler County, Ohio. Accordingly, the Court will construe all motions involving Butler County as pertaining to the Butler County Commissioners in their official capacities.

Fourth, the plaintiff filed a motion for partial summary judgment against defendants Butler County and Richard Holzberger (doc. 67 and doc. 68). The defendants opposed the motion for partial summary judgment (doc. 81 and 82), and the plaintiff replied (doc. 105 and doc. 106). For the reasons set forth below, the plaintiff's motion for partial summary judgment against defendants Butler County (or the Butler County Commissioners) and Sheriff Holzberger is hereby granted in part and denied in part.

Fifth, defendant Michael Gmoser filed a motion for summary judgment (doc. 73 and doc. 113). The plaintiff opposed the motion (doc. 83 and doc. 88), and Mr. Gmoser replied (doc. 99). For the reasons set forth below, defendant Michael Gmoser's motion for summary judgment is hereby denied.

Sixth, the plaintiff filed a motion to dismiss the counterclaim of defendant Prosecutor John Holcomb (doc. 92). Prosecutor Holcomb opposed the motion (doc. 100), and the plaintiff replied (doc. 112). For the reasons set forth below, the plaintiff's motion to dismiss is hereby granted.

Seventh, defendant Prosecutor John Holcomb filed a motion to dismiss or in the alternative for summary judgment (doc. 107). The plaintiff opposed the motion (doc. 117), and Prosecutor Holcomb replied (doc. 122). For the reasons set forth below, Prosecutor Holcomb's motion to dismiss or for summary judgment is hereby granted.

Eighth, the plaintiff filed a motion to substitute the Butler County Board of County Commissioners in place of defendant Butler County (doc. 118). Defendant Butler County opposed the motion (doc. 123), and the plaintiff replied (doc. 124). For the reasons set forth below, the plaintiff's motion for substitution is hereby granted.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court can-

not try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Fed.R.Civ.P. 56(c)).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"When a claim to qualified immunity is raised within the context of a motion for summary judgment, the non-movant must allege facts sufficient to indicate that the act in question violated clearly estab-

lished law at the time the act was committed." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1043 (6th Cir.1992). Thus, the plaintiff must satisfy two conditions when opposing a defendant's motion for summary judgment where the defendant claims qualified immunity. *Id.* First, the plaintiff must claim a violation of clearly established law. *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). Second, the plaintiff must present sufficient evidence to create a genuine issue of material fact as to whether the defendant actually committed the acts in question. *Id.* "At the summary judgment stage, whether the legal violation alleged was clearly established at the time of the incident, as well as whether a genuine issue of material fact exists as to whether the alleged violation occurred, are questions of law for the court." *Id.*

## DISCUSSION

There are eight motions currently pending before the Court. We will address each topic individually.

### *Amendment of Plaintiff's Second Amended Complaint*

■ The plaintiff named Butler County, Ohio as a defendant in both the initial complaint and in the second amended complaint. Clearly, Butler County, Ohio lacks the capacity to sue or be sued except where specially authorized by statute. *See* Ohio Rev.Code § 301.22; *Pancake v. Wakefield,* 102 Ohio App. 5, 1 O.O.2d 473, 140 N.E.2d 887 (Athens Cty.1956). The plaintiff should have named as defendants the individual Butler County Commissioners in their official capacities. To correct this error, the plaintiff now moves to amend the complaint to substitute the individual Butler County Commissioners in their official capacities as defendants in place of defendant Butler County, Ohio pursuant to Rule 15 of the Federal Rules of Civil Procedure.

■ If the limitations period has not yet expired, this Court could simply grant leave to amend the complaint pursuant to Rule 15(a). However, in considering a § 1983 claim, the court must apply the residual statute of limitations for personal injury claims not embraced by specific statutes of limitations of the state in which the alleged constitutional deprivation occurred. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). For civil rights actions arising in Ohio, the court must apply a two year statute of limitations borrowed from Ohio Revised Code § 2305.10. *Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989). Therefore, a two year statute of limitations applies to the § 1983 claims in the case at bar. The events Ms. Stone complains of occurred in November, 1989. Therefore, the statute of limitations has run against the parties the plaintiff now seeks to add to the complaint. Accordingly, the plaintiff may amend her complaint to name the Butler County Commissioners only if the amendment relates back pursuant to Rule 15(c).

■ For relation back of an amendment, four requirements must be satisfied: (1) the claim sought to be amended arose out of the conduct or occurrence alleged in the original complaint; (2) the party to be added received such notice that it will not be prejudiced in defending on the merits; (3) the party to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [them];" and (4) the second and third requirements were satisfied within the period provided for service of the summons and complaint. Fed.R.Civ.P. 15(c)(3) (1991 rev.); *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

In the case at bar, there is no question that the Butler County Commissioners had actual notice of this case at the time it was initially commenced and that the claims at issue arose from the conduct alleged in the original complaint. The issues, then, are whether the Commissioners "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party," Fed.R.Civ.P. 15(c)(3) (1991 rev.), and whether the individual county commissioners will be prejudiced in maintaining a defense on the merits.

In *Brown v. Georgia Dept. of Revenue,* 881 F.2d 1018 (11th Cir.1989), the plaintiff originally named the State Personnel Board as a defendant in his § 1983 action. Although the Personnel Board repeatedly raised the Eleventh Amendment as a defense, the plaintiff did not attempt to amend his complaint to add the individual members of the Personnel Board in their official capacities until after the two-year statute of limitations had expired. *Id.* at 1023. The district court allowed the plaintiff to amend his complaint, and the circuit court affirmed, stating:

> Since the Personnel Board had been a party to the case, there was no prejudice form the late amendment naming the Board members. Since the members were sued in their official capacity, they could only assert defenses available to the state agencies, not any personal defenses. The Attorney General, who under Georgia law represents all state officials sued in their official capacity, O.C.G.A. § 45–15–3(6), represented the State Board and raised those defenses. Moreover, the fact that the Attorney General raised the Eleventh Amendment defense throughout the proceedings evidenced his awareness of the pleading mistake. In such a situation it is reasonable to conclude that the individual Board members should have known that they were the correct defendants.

*Id.*

■ The same conclusions apply to the case at bar. First, Butler County, Ohio has been a defendant in this action since it was initially commenced. Second, the individual Commissioners will be sued only in their official capacities. The Commissioners may not invoke any personal defenses, but must rely only upon those defenses available to the County. Here, the County is represented by experienced trial counsel who has already filed a thirty-five page motion for summary judgment raising numerous defenses on behalf of the County. Those defenses are now equally applicable to the individual Commissioners. Finally, counsel for the County has repeatedly raised its lack of capacity to be sued. Thus, it is reasonable to conclude under the circumstances that the individual County Commissioners knew that, but for the plaintiff's mistake, the action would have been brought against the individual County Commissioners in their official capacities.

Accordingly, the plaintiff's motion to amend her complaint to substitute the individual Butler County Commissioners as defendants in their official capacities in place of Butler County, Ohio is hereby granted.

### Commissioners' Liability for Acts of the Sheriff and Prosecutor

The Butler County Commissioners contend they are not liable for the acts of Sheriff Holzberger or Prosecutor Holcomb in this case. They seem to take the extreme position that a municipal policymaker can never make municipal policy that violates the law. *See* doc. 65 at 16–21; doc. 81 at 8–9; doc. 102 at 5–11. If that were the case, § 1983 would almost never impose liability on a municipality.

At the opposite extreme, the plaintiff takes the position that, because Sheriff Holzberger and Prosecutor Holcomb are policymakers on many issues, every act either of them has ever taken constitutes county policy thereby imposing liability on the county. *See* doc. 67 at 36–40; doc. 85 at 7–15; doc. 105 at 5–6. Neither of these positions accurately reflect the law.

■ The doctrine of respondeat superior does not apply to impose liability on a municipality for the acts of its employees under § 1983. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, a municipality is liable only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2036. To establish a municipal policy, the following requirements must be satisfied: (1) The municipality officially sanctioned or ordered the challenged action; (2) The actor or decisionmaker had final policymaking authority under state law; and (3) The actor or decisionmaker had final policymaking authority in the area of the municipality's business in question. *City of St.*

*Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

▪ In addition to municipal liability for acts taken pursuant to municipal policy, § 1983 imposes liability on the municipality "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–691, 98 S.Ct. at 2036. To impose municipal liability, a custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). In addition, the custom must have the acquiescence of a policymaker. *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

▪ State law (including local law) governs the determination as to who has final policymaking authority. *Jett,* 491 U.S. at 737, 109 S.Ct. at 2723. "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Id.* (emphasis in original).

▪ An unconstitutional governmental policy may be "inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924. Of course, the policymakers must have the authority to make *final* policy. *Id.* at 127, 108 S.Ct. at 926.

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the offi-

cial's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.*

The County Commissioners rely on this language to contend that, because the Sheriff's and Prosecutor's actions allegedly violate the law, the Sheriff and Prosecutor are not making final policy because a higher authority (the lawmakers) has constrained their actions. Such reliance is misplaced.

▪ Under Ohio law, the Sheriff and the Prosecutor are the officials who make policy for Butler County with regard to the operation of their offices and discharge of their duties. *See Pembaur,* 475 U.S. at 484–85, 106 S.Ct. at 1300–01; Conklin dep. at 9. In fact, Mr. Conklin, the County Administrator, testified at his deposition that the County Commissioners have no authority to override the decisions of the Sheriff or the Prosecuting Attorney except in budgetary matters. Conklin dep. at 9 and 13; *see also* Holzberger dep. at 13–14 and Holcomb dep. at 13. Therefore, Sheriff Holzberger and Prosecutor Holcomb possess final policymaking authority in the discharge of their duties. Accordingly, their decisions made in the discharge of their duties constitute county policy, and the county is liable for actions taken pursuant to those decisions.

### Commissioners' Liability for Acts of Those Other than the Sheriff or Prosecutor

As established above, Sheriff Holzberger and Prosecutor Holcomb are the official policymakers with respect to the actions at issue in this case. Therefore, the County Commissioners contend, they are not liable for actions taken by anyone other than the Sheriff and Prosecutor.

▪ A county is liable for the actions of employees other than policymakers where a policymaker ratifies the employees' decision, where the employee acts at the di-

rection of a policymaker, or where "a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor [policymaker] must have been aware." *Praprotnik,* 485 U.S. at 130, 108 S.Ct. at 928. To infer the existence of a municipal policy from the isolated misconduct of a single low-level employee would amount to the application of *respondeat superior* which the Supreme Court rejected in *Monell. Oklahoma City v. Tuttle,* 471 U.S. 808, 831, 105 S.Ct. 2427, 2440, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring in part and concurring in the judgment).

█ In the case at bar, the plaintiff alleges that certain lower level county officers performed certain acts for which liability cannot be imposed on the county. This Court agrees that those employees are not county policymakers and their decisions do not necessarily represent county policy. However, the plaintiff contends that those employees acted at the direction of or in conformity with county policy established by Sheriff Holzberger or Prosecutor Holcomb. If so, the county is liable for their acts. Therefore, there are genuine issues of material fact that preclude summary judgment on the Commissioner's liability for acts taken by individual police officers and assistants to the prosecutor.

*The November 1, 1989 Arrest*

Sheriff Holzberger and Captain Carpenter contend that they had probable cause to arrest Ms. Stone as a material witness. Therefore, they claim, they are entitled to summary judgment on Count One of the plaintiff's second amended complaint. In the alternative, Sheriff Holzberger and Captain Carpenter claim that they are entitled to qualified immunity for Ms. Stone's arrest. In addition, the Butler County Commissioners also move for summary judgment on Count One of the plaintiff's second amended complaint.

█ Government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Stated another way, an official

is immune if a reasonable person would have believed the action was lawful in light of the clearly established law and the information the official possessed at the time he acted. *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Long v. Norris,* 929 F.2d 1111, 1115 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991). "When the official's claim of immunity turns on decisional law, this court must focus on whether, at the time of the officers' acts, the right asserted was 'clearly established' by looking to the decisions of the Supreme Court or the Sixth Circuit Court of Appeals." *Hall v. Shipley,* 932 F.2d 1147, 1150 (6th Cir.1991).

█ On December 20, 1989, the United States Court of Appeals for the Sixth Circuit issued its opinion in *White by Swafford v. Gerbitz,* 892 F.2d 457 (6th Cir.1989). In *White,* the court concluded that an officer was immune from liability for the warrantless arrest and detention of a murder witness pursuant to a Tennessee statute very similar to Ohio's material witness statutes, Ohio Revised Code § 2937.18 and § 2941.48. In doing so, the court specifically stated:

Although we agree that, if confronted by the issue, Tennessee courts would recognize the authority to arrest and detain a material witness, the current state of the law on this issue is not sufficiently established to have put Detective Angel on notice that he was violating clearly established constitutional or statutory rights.

*White by Swafford v. Gerbitz,* 892 F.2d 457, 461 n. 3 (6th Cir.1989); *see also White,* 892 F.2d at 464 (Jones, J. dissenting) ("The court correctly notes that White could not establish a constitutional violation ensuing from Officer Angel's actions because courts have not yet determined what constitutes probable cause to arrest and detain a material witness to a crime.").

Ms. Stone was arrested nearly two months before the court issued the *White* decision. At that time, as both the majority and the dissenting judges concluded, the law on this issue had not yet been sufficiently established to place an arresting

officer on notice that he was violating the arrestee's clearly established constitutional or statutory rights. Therefore, the arresting officers are entitled to qualified immunity for claims arising out of Ms. Stone's arrest.

In addition, the Sheriff's defendants and the Butler County Commissioners contend that Sheriff Holzberger and Captain Carpenter had probable cause to arrest Ms. Stone. The United States Court of Appeals for the Sixth Circuit has enunciated the probable cause standard as follows:

> [A]rrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law.... The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." ... Probable cause requires only the probability of criminal activity not some type of "prima facie" showing.... If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant.

*Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988) (citations omitted).

 To be subject to arrest as a material witness, the witness must possess information material to the investigation of a crime, and his statements or behavior must make it "reasonably unlikely that he would appear at the suspect's trial." *White by Swafford v. Gerbitz*, 892 F.2d 457 (6th Cir.1989) (construing Tennessee witness statute similar to Ohio's). Thus, to have probable cause to arrest a material witness, the arresting officers must possess knowledge of facts or circumstances sufficient to warrant a reasonably cautious officer to believe that the witness possesses information material to the criminal investigation and is reasonably unlikely to appear to testify.

 In the case at bar, Sheriff Holzberger and Captain Carpenter arrested Ms. Stone as a material witness to the murder of Janavie Mills. Ms. Stone's long-time boyfriend was the primary suspect in the murder. Ms. Stone admitted being with Mr. Jones an hour before her arrest, and she and Mr. Jones had been moving from place to place to avoid police detection. Although Ms. Stone never specifically refused to appear to testify, her statements indicated that her primary loyalty was to her boyfriend, Larry Jones. Further, even though she came to the Ebbing home voluntarily on November 1, 1989 to speak to Sheriff Holzberger, she attempted to leave before the conversation had concluded. Sheriff Holzberger understandably feared that, because Ms. Stone had no residence, he would be unable to locate her in the future, and Ms. Stone would probably not appear to testify. In addition, Ms. Stone indicated that she possessed substantial information pertinent to the murder investigation.

Therefore, Sheriff Holzberger had probable cause to arrest Ms. Stone. Accordingly, the Sheriff's defendants' motion and the Butler County Commissioners' motion for summary judgment on Count One of the plaintiff's second amended complaint are hereby granted.

### Detention from November 1, 1989 until November 6, 1989

The Sheriff's defendants claim they had no duty to promptly afford Ms. Stone a hearing. Therefore, they claim, they are entitled to summary judgment on Count Two of the plaintiff's second amended complaint. In the alternative, the Sheriff's defendants claim that they are entitled to qualified immunity because Ms. Stone had no clearly established right to a prompt judicial hearing.

However, Ms. Stone claims she did in fact have a clearly established right to a prompt hearing upon her arrest. Accordingly, she moves for summary judgment against Sheriff Holzberger and the Butler County Commissioners on her Fourth Amendment claim for incarceration without a hearing from November 1, 1989 to November 6, 1989.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. 4. The Fourth Amendment is made applicable to the states by the Fourteenth Amendment. U.S. Const. Amend. 14.

■ With respect to criminal suspects, the Fourth Amendment "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). Generally, absent an emergency or other extraordinary circumstance, a criminal arrestee should receive a judicial determination of probable cause within 48 hours of arrest. *County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).[2] Therefore, if Ms. Stone had been arrested on suspicion of a crime, there is no doubt that the arresting officer would have been required to ensure she received a hearing before November 6, 1989.

The issue, then, becomes whether a person arrested on suspicion of criminal activity is entitled to more favorable treatment then a material witness arrestee who has committed no crime. This Court concludes that she is not. We further conclude that no reasonable law enforcement officer could believe that a criminal arrestee is entitled to higher constitutional protections than a witness arrestee.

"Haste in the production of a person before a committing magistrate is of special importance when the only reason for his detention is as a material witness." *Houston v. Humboldt County,* 561 F.Supp. 1124, 1126 (D.Nev.1983), *aff'd sub nom., Houston v. Bryan,* 725 F.2d 516 (9th Cir.1984). As The Honorable Nathanial Jones accurately recognized in his dissenting opinion:

[O]ne proposition should be apparent: the arrest and detention of a citizen as a material witness requires a showing of probable cause under the Fourth Amendment to the United States Constitution because under the Fourth Amendment "the essential element is the physical restraint placed upon the person, not the purpose behind the restraint."

*White by Swafford v. Gerbitz,* 892 F.2d 457 (6th Cir.1989) (Jones, J., dissenting) (quoting *In re Bacon v. United States,* 449 F.2d 933, 942 (9th Cir.1971)).[3]

In addition, the Ohio Revised Code recognizes a witness' right to Fourth Amendment protections by requiring prompt entry of a recognizance, with or without a surety, before an arrestee witness is committed to the county jail. *See* Ohio Rev.Code § 2941.48 (Page's 1987). Specifically, Ohio Revised Code § 2941.48 provides in part:

In any case pending in the court of common pleas, the court, either before or after indictment, may require any witness designated by the prosecuting attorney to enter into a recognizance, with or without surety, in such sum as the court thinks proper for his appearance to testify in such cause. *A witness failing or refusing to comply with such order shall be committed* to the county jail

2. Obviously, the Court's decision in *McLaughlin* is not relevant to a determination of qualified immunity in this case since the arrest and incarceration in this case occurred two years prior to the Court's decision. However, prior to *McLaughlin,* several courts used 24 to 48 hours as a guideline. *See, e.g., King v. Massarweh,* 782 F.2d 825 (9th Cir.1986); *Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985) (en banc); *Mabry v. County of Kalamazoo,* 626 F.Supp. 912 (W.D.Mich.1986); *Sanders v. City of Houston,* 543 F.Supp. 694 (S.D.Tex.1982).

3. In *White,* the court did not address the time period in which the arresting officers were required to present the arrestee to a magistrate. Even in 1984, the arresting officers in *White* recognized the witness' right to a prompt hearing and afforded him one approximately 12 hours after his arrest. *White by Swafford v. Gerbitz,* 892 F.2d at 459. In addition, the case Judge Jones quoted in his *White* dissent was decided in 1971.

until he gives his testimony in such case or is ordered discharged by the court. Ohio Rev.Code § 2941.48 (Page's 1987) (emphasis added).

■ Therefore, it is apparent to this Court that a person arrested as a material witness is entitled to, at the very least, the same Fourth Amendment protections afforded to a person arrested on suspicion of criminal conduct. Further, the witness' right to Fourth Amendment protection was clearly established prior to 1989, and a reasonable police officer was clearly on notice that such right existed.

■ In the case at bar, Sheriff Holzberger arrested Ms. Stone as a material witness to the murder of Janavie Mills on November 1, 1989. No arrest warrant was obtained, and Ms. Stone was incarcerated for five days before she received a probable cause hearing. Sheriff Holzberger offers no explanation for the five day delay. If such actions are permitted, police officers could randomly arrest and detain innocent citizens for five day periods without ever demonstrating any reason for doing so. Clearly, such actions violate the Fourth Amendment. Therefore, Sheriff Holzberger violated Ms. Stone's Fourth Amendment rights by failing to present her to a magistrate promptly after her arrest. Because Sheriff Holzberger violated Ms. Stone's clearly established Fourth Amendment rights, he is not entitled to qualified immunity.

Accordingly, Ms. Stone is entitled to summary judgment against Sheriff Holzberger and the Butler County Commissioners on Count Two of her second amended complaint. Sheriff Holzberger's motion for summary judgment on this claim is hereby denied.

■ As the arresting officer, Sheriff Holzberger had the burden of ensuring that Ms. Stone was taken before a magistrate without unreasonable delay. *See* Ohio Rev.Code § 2935.05 (Page's 1987). Accordingly, the remaining Sheriff's defendants are entitled to summary judgment on this claim.

*Failure to Release Ms. Stone on November 6, 1989*

The Sheriff's defendants claim that they relied on the prosecutor's advice and the November 7, 1989 order from Judge Moser in failing to release Ms. Stone on November 6, 1989. Therefore, they contend, the Sheriff's defendants are entitled to summary judgment on Count Three of the plaintiff's second amended complaint. In addition, Ms. Stone claims that she is entitled to summary judgment against Sheriff Holzberger and the Butler County Commissioners on this claim.

The plaintiff "agrees with defendant Sheriff that he enjoys qualified immunity from suit in connection with the decision, advised by the Prosecuting Attorney, not to release plaintiff from jail after her O.R. bond was granted on November 6." Doc. 106 at 11. Accordingly, because all parties agree that the Sheriff's defendants are entitled to qualified immunity in deciding not to release Ms. Stone on November 6, 1992, the Sheriff's defendants' motion for summary judgment on Count Three of the plaintiff's second amended complaint is hereby granted.

■ The plaintiff repeatedly asserts that qualified immunity protects an official from liability only in his personal capacity. This is true. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). However, even if the plaintiff prevails against an official in his official capacity, liability may not be imposed on the named defendant. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The United States Supreme Court explained the distinction between individual-capacity and official-capacity actions as follows:

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.... Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ... As long as the government entity receives notice and an opportunity

to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Id.* at 165–66, 105 S.Ct. at 3105 (emphasis in original) (citations omitted).

In the case at bar, the Sheriff's defendants are qualifiedly immune from liability for failing to release Ms. Stone on November 6, 1989. Thus, Ms. Stone may impose liability against the Sheriff's defendants only in their official capacity, i.e., against Butler County's assets. However, the Butler County Commissioners are already parties to this action in their official capacities as representatives of Butler County, Ohio. Accordingly, it is redundant to discuss Sheriff Holzberger's liability in his official capacity.

As to the liability of the Butler County Commissioners for Sheriff Holzberger's failure to release Ms. Stone on November 6, 1989, genuine issues of material fact preclude summary judgment on that issue.

### The November 7, 1989 Bond Hearing

The plaintiff has moved for summary judgment against Sheriff Holzberger and the Butler County Commissioners regarding the ex parte, in camera hearing on November 7, 1989. However, the hearing has not been pled as the basis for liability. In Count Six of the plaintiff's twenty-count second amended complaint, the plaintiff alleges that Sheriff Holzberger and Prosecutor Holcomb conspired with others to deprive plaintiff of constitutional rights. The plaintiff simply alleges that the November 7, 1989 hearing constituted an overt act in furtherance of the conspiracy. Thus, no claim is made for alleged constitutional deficiencies at the hearing itself.

### Conspiracy

The Sheriff's defendants contend that there is no evidence of a conspiracy to violate Ms. Stone's civil rights. Therefore, they claim, the Sheriff's defendants are entitled to summary judgment on Count Six of the plaintiff's second amended complaint. The County Commissioners also move for summary judgment on Ms. Stone's conspiracy claim.

 To impose liability for a conspiracy under § 1983, "plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of conspiracy is insufficient to establish a section 1983 claim." *Landrigan v. Warwick,* 628 F.2d 736, 742 (1st Cir.1980) (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 622 (7th Cir. 1979)). "The gist of the [section 1983] cause of action is the deprivation and not the conspiracy." *Id.* (quoting *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538, 540 n. 2 (7th Cir.1975)). A municipality is liable for conspiracy if it, through a policymaker, agrees to combine with others to deprive an individual of her constitutional rights. *Fisher v. City of Cincinnati,* 753 F.Supp. 681, 691 (S.D.Ohio 1990).

 According to Prosecutor Holcomb, he and Sheriff Holzberger entered into an agreement with Mr. Ebbing (Ms. Stone's step-father) providing that Ms. Stone would remain in jail for as long as necessary for the Mills murder investigation and, in return, Ms. Stone would not be charged with stealing the Rent–A–Center televisions. *See* Holcomb dep. at 46–47. There is no evidence that Ms. Stone was involved in or informed of the agreement. In fact, Prosecutor Holcomb stated, "I don't know that I had any specific agreement with Mignon. I had the specific agreement with her father and mother and Sheriff Holzberger." *Id.* at 86–87.

There are genuine issues of material fact as to whether Ms. Stone's constitutional rights have been violated by the *ex parte, in camera* O.R. bond revocation, and in failing to inform her of the existence of the newly imposed $50,000 bond. In view of Prosecutor Holcomb's statements, there are also genuine issues of material fact regarding the existence of a conspiracy to violate Ms. Stone's constitutional rights and the County's involvement in the al-

leged conspiracy. Accordingly, the Sheriff's defendants' motion and the Butler County Commissioners' motion for summary judgment on Count Six of the plaintiff's second amended complaint are hereby denied.

### Detention from November 7, 1989 to November 20, 1989

On November 7, 1989, Judge Moser of the Butler County Court of Common Pleas set Ms. Stone's bond at $50,000 and committed her to the Butler County Jail upon her failure to comply with the bond. *See* Ex. B to doc. 82. The Sheriff's defendants contend that, because they relied on Judge Moser's facially valid order, they are qualifiedly immune from liability for detaining Ms. Stone from November 7, 1989 to November 20, 1989. The plaintiff, to the contrary, contends that such detention violated her Fourth and Fourteenth Amendment rights. Therefore, she claims, she is entitled to summary judgment on Count Four of her second amended complaint.

As this Court concluded above, Sheriff Holzberger had a duty to ensure that a person he arrested as a material witness was promptly afforded a judicial hearing. In effect, on November 6, 1989, Sheriff Holzberger re-arrested Ms. Stone as a material witness. Therefore, he again had a duty to ensure that she was afforded a hearing without unnecessary delay.

A probable cause hearing may be combined with the arrestee's bond hearing. *See generally Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). On November 7, 1989, Ms. Stone was given a bond hearing. Although Sheriff Holzberger did not personally ensure that she was afforded a prompt hearing, Ms. Stone did in fact receive a bond hearing less than twenty-four hours after her re-arrest. Such hearing satisfied Sheriff Holzberger's obligation to bring Ms. Stone before the Court.

In addition, Judge Moser issued a $50,000 recognizance bond on November 7, 1989. Judge Moser had the authority to issue such a bond and the bond was facially valid. *See* Ohio Rev.Code § 2937.18 and § 2941.48; *see also* Ex. B to doc. 82.

Therefore, Sheriff Holzberger was entitled to rely upon such bond in detaining Ms. Stone from November 7, 1989 to November 20, 1989, and is insulated from liability for Ms. Stone's detention from November 7, 1989 to November 20, 1989. *See, e.g., Doe v. McFaul,* 599 F.Supp. 1421, 1431–32 (N.D.Ohio 1984).

Accordingly, the Sheriff's defendants' motion for summary judgment on Count Four of the plaintiff's second amended complaint is hereby granted. Ms. Stone's motion for summary judgment against Sheriff Holzberger on that claim is hereby denied.

### Failure to Inform Ms. Stone of the $50,000 Bond

The Sheriff's defendants' contend that it was not their duty to inform Ms. Stone of the $50,000 bond. Therefore, they claim, they are entitled to summary judgment on Count Five of the plaintiff's second amended complaint. To the contrary, the plaintiff moved for summary judgment on this claim against both Sheriff Holzberger and the Butler County Commissioners.

There are genuine issues of material fact surrounding this issue and summary judgment is therefore inappropriate. Accordingly, both the Sheriff's defendants' motion and the plaintiff's motion for summary judgment on Count Five are hereby denied.

### Search of Ms. Stone's Former Apartment

In Count Fourteen of the plaintiff's second amended complaint, Ms. Stone alleges that her apartment was searched in violation of her Fourth Amendment right to be free from unreasonable searches. The first search of these premises was performed pursuant to a facially valid search warrant signed by Judge Moser on October 30, 1989. The plaintiff admits that the Sheriff's defendants are not liable for the execution of a facially valid search warrant, and that search is not the subject of Ms. Stone's claim.

Rather, the plaintiff alleges, subsequent to that search, the Sheriff's defendants searched the same premises as many as

five times without a warrant. It is these warrantless searches of which the plaintiff now complains.

The Sheriff's defendants and the Butler County Commissioners contend that, by the time these subsequent searches were performed, Ms. Stone had voluntarily abandoned the premises. Therefore, they claim, she had no possessory interest in the apartment and lacks standing to assert an unlawful search claim.

■ The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const.Amend. 4. However, a person does not have standing to object to a search of his property once the property has been voluntarily abandoned. *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *State v. Freeman*, 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044 (1980), *cert. denied*, 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981); *State v. Brown*, 20 Ohio App.3d 36, 20 OBR 38, 484 N.E.2d 215 (Hamilton Cty.1984).

■ In the case at bar, Mignon Stone and Larry Jones rented the apartment in question for $25 per week from the owner of the property, James Kerby. There was no written lease agreement, and Mr. Kerby did not require any sort of deposit. Ms. Stone and Mr. Jones remained current on their rent until the trouble with Mr. Jones began. There is no dispute that Ms. Stone left this apartment at least ten days prior to her arrest and never returned. Ms. Stone did, however, leave some of her possessions in the apartment, and continued to receive mail at that address. In addition, Mr. Kerby, the owner of the property, had no key to the apartment, and considered the apartment rented to Ms. Stone at the time of the searches in question. Kerby dep. at 19. Therefore, the Court concludes that there are genuine issues of material fact regarding whether Ms. Stone had voluntarily abandoned the apartment prior to the warrantless searches.

Accordingly, the Sheriff's defendants' motion and the Butler County Commissioners' motion for summary judgment on

Count Fourteen of the plaintiff's second amended complaint are hereby denied.

### The Right to Vote

■ Ms. Stone was incarcerated as a material witness from November 1, 1989 to November 20, 1989. During that time, the state conducted a general election. There were no federal issues on the ballot.

In Count Eighteen of the plaintiff's second amended complaint, Ms. Stone claims that she asked Captain Carpenter if she could vote in the November election, and he refused to allow her to vote. The Sheriff's defendants deny that this occurred, but contend that, even if the facts are as plaintiff alleges, there is no federal constitutional right to vote in a purely state and local election. Therefore, they claim, they are entitled to summary judgment on Count Eighteen of the plaintiff's second amended complaint.

The case upon which the Sheriff's defendants rely, *Piper v. Swan*, 319 F.Supp. 908 (E.D.Tenn.1970), is inapposite. In *Piper*, the plaintiff claimed a Tennessee statute making it a misdemeanor to distribute campaign literature within 100 feet of a polling place violated his First Amendment rights to freedom of speech and freedom of the press. *Id.* at 909. The district court in *Piper*, in noting that federal courts do not generally intervene in state elections, stated, "Participation in state elections is not considered a federally protected right." *Id.* at 910 (citing *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944)).

However, in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the plaintiffs claimed that the malapportionment of the Alabama Legislature deprived them and others similarly situated of rights. The voters brought suit against various state election officials. *Id.* at 537, 84 S.Ct. at 1368. There, the United States Supreme Court specifically stated, "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this

indelibly clear." *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377–78, 12 L.Ed.2d 506 (1964). Therefore, we conclude that Ms. Stone had a federally protected right to vote in the November, 1989 election.

Accordingly, the Sheriff's defendants' motion for summary judgment on Count Eighteen of the plaintiff's second amended complaint is hereby denied.

### Plaintiff's State Law Claims Against the Butler County Commissioners

As the plaintiff concedes, the individual Butler County Commissioners, in their official capacities, are immune from damages liability on plaintiff's pendent state claims. *See* Ohio Rev.Code § 2744.02(A)(1); *see also* doc. 85 at 20. Accordingly, the Butler County Commissioners' motion for summary judgment on Counts Seven, Eight, Nine, Ten, Fourteen (as to violation of Ohio law only), Fifteen, Seventeen and Twenty of the plaintiff's second amended complaint is hereby granted.

### False Arrest and False Imprisonment

The Sheriff's defendants contend that probable cause existed for both Ms. Stone's arrest and her detention. Therefore, they claim, they are entitled to summary judgment on Ms. Stone's claims for false arrest and false imprisonment.

As discussed above, the Sheriff's defendants had probable cause to arrest Ms. Stone and are entitled to summary judgment on claims arising from Ms. Stone's arrest. Thus, the Sheriff's defendants' motion for summary judgment on Count Seven (false arrest) of the plaintiff's second amended complaint is hereby granted.

As for false imprisonment, "The tort of false imprisonment arises when one is confined intentionally, for any appreciable time, against his will and without lawful justification." *Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 275, 549 N.E.2d 1210 (Hamilton Cty.1988). However, the Ohio Supreme Court recently stated:

> Because of the continuing nature of the false imprisonment tort, it is clear that a person who intentionally confines another cannot escape liability by arguing that

he or she was initially privileged to impose the confinement. Once the initial privilege expires, the justification for continued confinement expires and possible liability for false imprisonment begins.

*Bennett v. Ohio Dept. of Rehabilitation & Correction*, 60 Ohio St.3d 107, 109, 573 N.E.2d 633 (1991). Of course, "An action for false imprisonment cannot be maintained where the imprisonment is in accordance with the judgment or order of a court of competent jurisdiction, unless such judgment or order is absolutely void." *Tymcio v. State of Ohio*, 52 Ohio App.2d 298, 303, 6 O.O.3d 310, 369 N.E.2d 1063 (Franklin Cty.1977).

This Court concluded above that Sheriff Holzberger is insulated from liability for Ms. Stone's incarceration from November 6, 1989 to November 20, 1989. Accordingly, the Sheriff's defendants' motion for summary judgment on Count Eight (false imprisonment) of the plaintiff's second amended complaint is hereby granted.

### Intentional Infliction of Emotional Distress

The Sheriff's defendants contend that Ms. Stone has failed to establish the required elements of intentional infliction of emotional distress. Therefore, they claim, they are entitled to summary judgment on Count Nine of the plaintiff's second amended complaint.

Pursuant to Ohio common law, "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 369, 6 OBR 421, 453 N.E.2d 666 (1983) (syllabus). Liability will be imposed "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 6 OBR 421, 453 N.E.2d 666. In addition, the emotional injury must be serious and of

a nature that no reasonable person would be expected to endure it. *Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 11 OBR 63, 463 N.E.2d 98 (Cuyahoga Cty.1983).

In the case at bar, Dr. Julia Hawgood testified in her deposition that Ms. Stone suffers from chronic, post-traumatic stress disorder. Hawgood dep. at 100 and 119. In addition, the plaintiff has presented evidence that, since the events in question, Ms. Stone has lost substantial weight, cannot sleep, has persistent recurring nightmares and has experienced significant personality changes. *See* Stone dep. I at 168 and Stone dep. II at 157; *see also* S. Ebbing dep. at 129 and 171. Accordingly, the plaintiff has created a genuine issue of material fact regarding severe emotional injury.

The issue, then, is whether the alleged emotional injury was intentionally or recklessly caused by the Sheriff's defendants' extreme and outrageous conduct. The plaintiff has presented evidence that she was held in a cell which smelled so bad a visitor gagged, had no hot water, and was unbearably cold. *See* Wilmer dep. at 10 and 15. Further, there is evidence that the Sheriff's defendants, during lengthy interrogations, compared her to a Charlie Manson follower, showed her pictures of Ms. Mills' severely decayed, nude corpse, asked numerous questions about her sexual habits and proclivities, and threatened her with extended incarceration of an indefinite length, criminal charges and strip searches if she failed to cooperate. Holzberger dep. at 224 and 233; Carpenter dep. at 152–53; Stone dep. II at 141 and 155. We conclude, therefore, that the plaintiff has created a genuine issue of material fact as to whether the Sheriff's defendants are liable for intentional infliction of emotional distress.

Accordingly, the Sheriff's defendants' motion for summary judgment on Count Nine of the plaintiff's second amended complaint is hereby denied.

### Ohio Revised Code § 2935.16

The Sheriff's defendants contend that they owed no duty to Ms. Stone under § 2935.16. Therefore, they contend, they are entitled to summary judgment on Count Ten of plaintiff's second amended complaint.

Ohio Revised Code § 2935.16 provides:
When it comes to the attention of any judge or magistrate that a prisoner is being held in any jail or place of custody in his jurisdiction without commitment from a court or magistrate, he shall forthwith, by summary process, require the officer or person in charge of such jail or place of custody to disclose to such court or magistrate, in writing, whether or not he holds the person described or identified in the process and the court under whose process the prisoner is being held.

Ohio Rev.Code § 2935.16 (Page's 1987). The plaintiff acknowledges that defendants owed her no duty under Ohio Rev.Code § 2935.16, and does not contest dismissal of that claim. Doc. 84 at 30.

Accordingly, the Sheriff's defendants' motion for summary judgment on Count Ten of the plaintiff's second amended complaint is hereby granted.

### Ohio Revised Code § 2935.07

The Sheriff's defendants contend that Ms. Stone was advised of the reason for her arrest shortly after she was taken into custody. Therefore, they contend, they are entitled to summary judgment on Count Fifteen of the plaintiff's second amended complaint.

Ohio Revised Code § 2935.07 requires an arresting officer to inform an arrestee of the reason for the arrest and the authority upon which the arrest is based. The Ohio Supreme Court, in interpreting § 2935.07, stated, "Where probable cause exists for an arrest by a police officer, the failure to notify the accused of the cause of his arrest does not render the arrest illegal if he is notified of the offense with which he is charged soon after he is taken into custody." *State v. Fairbanks*, 32 Ohio St.2d 34, 35, 61 O.O.2d 241, 289 N.E.2d 352 (1972) (syllabus para. 4).

At her deposition, Ms. Stone admitted that Sheriff Holzberger told her the reason for her arrest shortly after she was taken into custody:

Q. And you indicated he never told you that night what you were under arrest for or why you were being held.

A. Later that night, yes.

Q. What did he tell you?

A. Something ...

* * * * * *

Q. Maybe my question was so simple that you didn't understand it. Would you read the question back to her? (Record read by reporter)

A. I believe that night after we were at the Sheriff's Department that he told me that he was going to hold me as a material witness.

Stone dep. I at 63–64. Therefore, Sheriff Holzberger satisfied his obligation to inform her of the basis for her arrest. Accordingly, the Sheriff's defendants' motion for summary judgment on Count Fifteen of the plaintiff's second amended complaint is hereby granted.

### Intimidation of a Witness

■ The Sheriff's defendants and the Butler County Commissioners contend that Ohio Revised Code § 2921.03 is inapplicable to the case at bar. Therefore, they claim, they are entitled to summary judgment on Count Seventeen of the plaintiff's second amended complaint.

Ohio Revised Code § 2921.03 provides, "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of his duty." Ohio Rev.Code § 2921.03(A) (Page's 1987). Violation of this section is a third degree felony. Ohio Rev.Code § 2921.03(B).

This statute is indeed inapplicable to the case at bar. First, § 2921.03 is a criminal statute. There is no automatic civil liability for violation of a criminal statute.

Second, the Sheriff's defendants did not attempt to hinder Ms. Stone in the discharge of her duty as a witness. If the plaintiff's allegations are true, the defendants used inappropriate means in an attempt to force Ms. Stone *to* discharge her duties as a witness. Such conduct, if outrageous enough, may be actionable as intentional infliction of emotional distress, but § 2921.03 simply does not impose civil liability under these circumstances.

Third, in opposition to the Sheriff's defendants' motion for summary judgment on this claim, the plaintiff simply states, "It plainly is unlawful for law enforcement personnel to make groundless threats of criminal prosecution against a witness, if the witness does not 'tell us what we want to hear.'" Doc. 84 at 28. The plaintiff fails to cite a single case or authority in support of the position that Ohio Rev.Code § 2921.03(A) applies to such a situation.

Accordingly, the Sheriff's defendants' motion and the Butler County Commissioners' motion for summary judgment on Count Seventeen of the plaintiff's second amended complaint are hereby granted.

### Inadequate Training of Law Enforcement Personnel

The Butler County Commissioners contend that the plaintiff has not offered evidence of a municipal policy or custom of inadequate training. Therefore, they contend, the County Commissioners are entitled to summary judgment on Count Eleven.

The plaintiff concedes that Sheriff Holzberger, as the County's final policymaker on law enforcement, is responsible for ensuring that officers receive proper training. The United States Supreme Court addressed municipal liability for alleged failure to train law enforcement personnel, stating, "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Only where "deliberate indifference" is proven can a failure to train be properly considered a municipality's "policy or custom" actionable under § 1983. *Id.* at 389, 109 S.Ct. at 1205.

■ Deliberate indifference is a difficult standard to satisfy. "In virtually every instance where a person has had his or her constitutional rights violated by a [mu-

nicipal] employee, a § 1983 plaintiff will be able to point to something the municipality 'could have done' to prevent the unfortunate incident." *Id.* at 392, 109 S.Ct. at 1206. However, simply demonstrating that training could have been better is insufficient to establish liability. *Id.*

In the case at bar, Ohio law specifically requires that no person shall be permanently appointed as a peace officer of any county unless the person has received a certificate from the Executive Director of the Ohio Peace Officer Training Council attesting to satisfactory completion of a basic training program. Ohio Rev.Code § 109.77(A). Sheriff Holzberger testified at his deposition, "I haven't looked at the basic police officer's training curriculum, so I can't answer if they're trained in that [the rights of material witnesses] or not." Holzberger dep. at 229. The plaintiff alleges that there is a lack of training amounting to deliberate indifference. However, neither party has offered a shred of evidence regarding any training or lack of training. On such a non-existent record, the Court can only conclude that there are factual issues to be decided at a later date.

Accordingly, the County Commissioners' motion for summary judgment on Count Eleven of the plaintiff's second amended complaint is hereby denied.

### Claims Against Prosecutor Holcomb

The plaintiff alleges four claims against Prosecutor Holcomb: (1) Count Three of the plaintiff's second amended complaint alleges that Prosecutor Holcomb violated Ms. Stone's Fourteenth Amendment right to due process by advising Sheriff Holzberger that he need not release Ms. Stone on November 6, 1989; (2) Count Five alleges that Prosecutor Holcomb violated Ms. Stone's Fourth and Fourteenth Amendment rights by failing to inform Ms. Stone that Judge Moser had issued a $50,000 surety bond on November 7, 1989; (3) Count Six alleges that Prosecutor Holcomb conspired with Sheriff Holzberger and others to deprive Ms. Stone of certain constitutional rights; and (4) Count Eighteen alleges that Prosecutor Holcomb deprived Ms. Stone of her federally protected right to vote when he refused to intervene to require Sheriff Holzberger or Captain Carpenter to allow Ms. Stone to vote, even though Mr. Ebbing asked Prosecutor Holcomb to do so.

Prosecutor Holcomb now moves for dismissal or, in the alternative, for summary judgment on all claims against him. The plaintiff admits that the allegations against Prosecutor Holcomb in Count Eighteen must be dismissed as Prosecutor Holcomb had no duty to intervene. *See* doc. 117 at 5, n. 4. The plaintiff further admits that Prosecutor Holcomb is entitled to absolute prosecutorial immunity, in his individual capacity, for allegations in Count Five and Count Six.

Once again, the plaintiff goes to great pains to draw a distinction between individual capacity and official capacity actions. However, as noted above, an official capacity action is nothing more than a suit against the entity the official represents. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In the case at bar, Prosecutor Holcomb is absolutely immune from liability, in his individual capacity, on Count Five and Count Six. Thus, Ms. Stone may impose liability against Prosecutor Holcomb only in his official capacity, i.e., against Butler County's assets. However, the Butler County Commissioners are already parties to this action in their official capacities as representatives of Butler County, Ohio. Accordingly, it is redundant to discuss Prosecutor Holcomb's liability in his official capacity.

The only claim remaining against Prosecutor Holcomb, then, is Ms. Stone's claim that Prosecutor Holcomb violated her Fourth and Fourteenth Amendment rights by advising Sheriff Holzberger that he need not release Ms. Stone on November 6, 1989. Prosecutor Holcomb contends, first, that he is absolutely immune from liability on that claim, and second, that he is qualifiedly immune from liability on that claim.

A prosecutor is absolutely immune from § 1983 liability if the prosecutor's challenged activities are an "integral part of the judicial process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). "[T]he duties of the prosecutor in his role as advo-

cate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431, n. 33, 96 S.Ct. at 996, n. 33. Such protected prosecutorial duties include obtaining, reviewing and evaluating evidence, deciding which witnesses to call, attempting to control the presentation of the prosecution's testimony and attempting to obtain a search warrant. *See Id.* at 430 and 431, 96 S.Ct. at 995 and 996; *see also Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). However, a prosecutor is not absolutely immune for giving legal advice to law enforcement officers. *Burns v. Reed,* at ——, 111 S.Ct. at 1935.

■ In the case at bar, Ms. Stone allegedly identified a cocaine canister belonging to Mr. Jones after Judge Moser issued the O.R. bond, but before Ms. Stone had been released from the Butler County Jail. Sheriff Holzberger concluded that Ms. Stone had not been completely candid during her earlier interrogation, and desired to detain her for additional questioning. Sheriff Holzberger contacted Prosecutor Holcomb for legal advice on the subject. Prosecutor Holcomb concluded that Sheriff Holzberger could virtually rearrest Ms. Stone and attempt to have the O.R. bond revoked the next day when Judge Moser's court reconvened. Prosecutor Holcomb advised Sheriff Holzberger in accordance with that conclusion.

Prosecutor Holcomb may be absolutely immune for deciding to designate Ms. Stone as a material witness or for attempting to secure her testimony at trial. *See White by Swafford v. Gerbitz,* 860 F.2d 661, 665 n. 4 (6th Cir.1988), *cert. denied,* 489 U.S. 1028, 109 S.Ct. 1160, 103 L.Ed.2d 219 (1989); *see also Lewellen v. Raff,* 843 F.2d 1103, 1114–1115 (8th Cir.1988), *cert. denied,* 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989). However, that was not the case, here. In this case, Prosecutor Holcomb simply dispensed legal advice regarding the rearrest or continued detention of a material witness. Accordingly, he is not absolutely immune from § 1983 liability.

However, "[e]ven if not entitled to absolute immunity, a prosecuting attorney may claim qualified immunity." *Grant v. Hol-*

*lenbach,* 870 F.2d 1135, 1138 (6th Cir.1989). As discussed above, an official is qualifiedly immune from liability if a reasonable person would have believed the challenged action was lawful in light of the clearly established law and the information the official possessed at the time. *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In the case at bar, Prosecutor Holcomb dispensed the advice in question nearly two months before the court issued its decision in *White by Swafford v. Gerbitz,* 892 F.2d 457 (6th Cir.1989). At that time, as both the majority and the dissenting judges concluded, the law regarding the criterion for arresting a material witness had not yet been clearly established. Prosecutor Holcomb believed, at the time he offered his advice, that Ms. Stone had, for the first time, provided key information linking Mr. Jones to the murder scene. Likewise, he reasonably believed that Ms. Stone would flee upon her release. Therefore, Prosecutor Holcomb is entitled to qualified immunity for advising Sheriff Holzberger that he may, in effect, rearrest Ms. Stone and detain her until Judge Moser's court reconvened the next morning.

■ As noted repeatedly by the plaintiff, absolute or qualified immunity protects Prosecutor Holcomb from liability only in his individual capacity. Such immunity does not protect him from suit in his official capacity. However, an action against a municipal officer in his official capacity is nothing more than an action against the municipality he represents. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, because the plaintiff has already named the Butler County Commissioners in their official capacities as representatives of Butler County, Ohio, it is simply redundant to retain Prosecutor Holcomb in his official capacity as a defendant in this action.

Accordingly, Prosecutor Holcomb's motion to dismiss or, in the alternative, for

summary judgment is hereby granted in its entirety.

### Holcomb's Counterclaim

Defendant John Holcomb filed a counterclaim against Mignon Stone alleging that Ms. Stone, by initiating this suit, tortiously interfered with Prosecutor Holcomb's business relationship with Butler County. The plaintiff now moves to dismiss this counterclaim for failure to state a claim upon which relief may be granted and for lack of subject-matter jurisdiction.

Prosecutor Holcomb admits that his counterclaim alleges only state law violations and presents no independent basis for federal jurisdiction. A Court has ancillary jurisdiction over such a claim only if the counterclaim is compulsory pursuant to Rule 13(a) of the Federal Rules of Civil Procedure. *Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380 (6th Cir.1984).

■■■ Pursuant to Rule 13(a), a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R.Civ.P. 13(a) (1991 rev.). In addition, the United States Court of Appeals for the Sixth Circuit, rejecting a purely literal reading of the rule, has adopted a "logical relation" test. *Maddox*, 736 F.2d at 382. Under this test, the counterclaim must arise out of the same transaction or occurrence as the opposing party's claim and must also be "logically related in such a way as to make the counterclaim compulsory." *Id.* at 383. Factors to be considered in determining whether such relationship exists include whether the claim and counterclaim present essentially similar legal, factual and evidentiary questions, and whether the interests of judicial economy and efficiency would be served by hearing the claim and counterclaim together. *Id.*

■■■ In the case at bar, Prosecutor Holcomb claims that he had some sort of deal with Ms. Stone (or at least with her step-

father, Glen Ebbing) that Ms. Stone would be incarcerated as a material witness, and in return Ms. Stone would not be prosecuted on potential criminal charges for the illegal sale of the Rent–A–Center televisions. After Ms. Stone named him as a defendant in this § 1983 action, Mr. Holcomb filed a counterclaim alleging that Ms. Stone filed this action maliciously and with the intent to interfere with his business relationship with Butler County. As Mr. Holcomb notes in his response to plaintiff's motion to dismiss the counterclaim, his counterclaim "is not a claim based only on the falsity of claims in Plaintiff's complaint. The gravamen of Holcomb's counterclaim is the intent of Plaintiff to interfere with Holcomb's business relationship with Butler County by making false claims." Doc. 100 at 7–8.

Under these circumstances, this Court cannot conclude that Ms. Stone's claim and Mr. Holcomb's counterclaim arise out of the same transaction or occurrence. Ms. Stone's claims arise out of the events of November, 1989. Mr. Holcomb's claim is based on Ms. Stone's naming him as a defendant in this action and her intent in doing so. Although there is obviously some factual overlap between the claims, the counterclaim presents several additional legal, factual and evidentiary questions irrelevant to Ms. Stone's claims. These include whether there is an agency relationship between Ms. Stone and her stepfather, Ms. Stone's intent in naming Mr. Holcomb as a defendant, and the wholly unrelated area of Ohio law regarding tortious interference with a business relationship between an elected official and the municipality for whom he works. Therefore, we conclude that Mr. Holcomb's counterclaim is not compulsory within the meaning of Rule 13(a), and this Court lacks ancillary jurisdiction over that counterclaim.

Accordingly, the plaintiff's motion to dismiss Mr. Holcomb's counterclaim is hereby granted.[4]

---

**4.** Mr. Holcomb, in his response to the plaintiff's motion, refers to a counterclaim for promissory estoppel. As this Court reads pleadings, promissory estoppel is simply a defense to the claims made against Mr. Holcomb. Promissory estoppel is not a separate cause of action.

*Claims Against a Private Attorney*

The plaintiff alleges two claims against Michael Gmoser, a private attorney.[5] In Count Six of the plaintiff's second amended complaint, the plaintiff claims that Mr. Gmoser conspired with Sheriff Holzberger and Prosecutor Holcomb to deprive Ms. Stone of her Fourth and Fourteenth Amendment rights, and is therefore liable for damages under § 1983. In Count Nineteen, the plaintiff alleges that Mr. Gmoser is liable for attorney malpractice by failing to vigorously advance Ms. Stone's interests after accepting representation of her.

 A private actor may be subject to § 1983 liability where he acts in concert with persons acting under color of state law. *Tower v. Glover*, 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984).

> To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them.

*Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988). To establish a claim for attorney malpractice, the plaintiff must demonstrate: (1) an attorney-client relationship gave rise to a duty; (2) the attorney breached that duty; and (3) the breach proximately caused damage to the client. *Krahn v. Kinney*, 43 Ohio St.3d 103, 105, 538 N.E.2d 1058 (1989).

 In the case at bar, Ms. Stone offers evidence that Mr. Gmoser, a former assistant prosecutor, was retained by Prosecutor Holcomb, a long-time friend, to represent Ms. Stone. *See* G. Ebbing dep. at 111, 147–48; Stone dep. I at 81; S. Ebbing dep. at 38. Mr. Gmoser admittedly represented Ms. Stone in court proceedings regarding the Mills murder on November 8, 1989 and November 9, 1989, and met with her again on November 11 or November 12, 1989. In addition, Mr. Gmoser attended a preliminary hearing in *State v. Jones* as counsel for Ms. Stone on November 16, 1989. In fact, Ms. Stone testified, "I believed him to be my lawyer." Stone dep. I at 106.

In addition, Ms. Stone offers evidence that Mr. Gmoser knew the prosecutor had struck a "deal" and intended to hold her until she told them everything she knew about Mr. Jones. Holcomb dep. at 74. Of course, both Ms. Stone and Mr. Ebbing deny making any deal. G. Ebbing dep. at 86–87; Stone dep. I at 57. Further, Mr. Gmoser knew that Prosecutor Holcomb feared that Mr. Cornett (Mr. Jones' attorney) would try to destroy Ms. Stone's effectiveness as a state's witness by going into Ms. Stone's background. Holcomb dep. at 74; Gmoser affidavit at para. 9. Mr. Gmoser's efforts without compensation to aid Ms. Stone in avoiding Mr. Cornett's deposition, but at the same time making no attempt to secure Ms. Stone's release could be inferred as an implicit agreement to assist Prosecutor Holcomb and Sheriff Holzberger in their alleged unconstitutional scheme.

Mr. Gmoser contends that he was simply retained by Mr. Ebbing for the limited purpose of keeping Ms. Stone from being deposed. He claims that, when asked about obtaining a bond for Ms. Stone, he informed her that he could not do that and that she would need to retain other counsel for that purpose. Although Mr. Gmoser's contentions may be true, this Court must conclude that Ms. Stone has offered sufficient evidence to create genuine issues of material fact precluding summary judgment on either of her claims against Mr. Gmoser.

Accordingly, Mr. Gmoser's motion for summary judgment is hereby denied.

## CONCLUSION

For the reasons set forth above, the City of Hamilton's motion for summary judgment (doc. 58) is denied as moot. The plaintiff's motion (doc. 118) to amend the second amended complaint to name the

---

5. Although defendant Gmoser also addressed Count Five of the complaint in his motion for summary judgment, Ms. Stone admits that Mr. Gmoser is a defendant only as to Count Six and Count Nineteen. *See* Doc. 83 at 18–19.

Butler County Commissioners in their official capacities as defendants in place of Butler County, Ohio is granted. The Sheriff's defendants' motion for summary judgment (doc. 60) is granted as to Counts 1, 2 (as to all Sheriff's defendants but Sheriff Holzberger), 3, 4, 7, 8, 10, 15, 17 and 20, but denied as to Counts 2 (as to Sheriff Holzberger only), 5, 6, 9, 14 and 18. The Butler County Commissioners' motion for summary judgment (doc. 65) is granted as to Counts 1, 7, 8, 9, 10, 14 (as to the state law claim only), 15, 17 and 20, but denied as to Counts 2, 6, 11 and 14 (constitutional claim only). The plaintiff's motion for summary judgment (doc. 67) is granted as to Count 2, but the remainder is denied. Defendant Michael Gmoser's motion for summary judgment (doc. 113) is denied. The plaintiff's motion to dismiss Prosecutor Holcomb's counterclaim (doc. 92) is granted. Defendant John Holcomb's motion to dismiss and/or for summary judgment (doc. 107) is granted.

SO ORDERED.