Ramon Mendez HOUSTON, Plaintiff,

v.

HUMBOLDT COUNTY, a political subdivision of the State of Nevada; Richard H. Bryan, individually and as the Attorney General, State of Nevada; Larry D. Struve, individually and as the Chief Deputy Attorney General, State of Nevada; Robert Manley, individually and as the Chief Criminal Deputy Attorney General, State of Nevada; Brian Hutchins, individually and as the Deputy Attorney General, State of Nevada; William Macdonald, individually and as the District Attorney, Humboldt County, Nevada; Jack T. Bullock II, individually and as the Deputy District Attorney, Humboldt County, Nevada; Frank Weston, individually and as the Sheriff, Humboldt County, Nevada; Donald Fox, individually and as the Deputy Sheriff, Humboldt County, Nevada; Humboldt County Board of Commissioners; Alan Beck, V.V. Botts, Tebeau Piquet, Pete L. Bengochea, and Sammye Ugalde, individually and as Commissioners of Humboldt County, Defendants.

No. Civ. R–81–297 BRT.

United States District Court,
D. Nevada.

April 15, 1983.

**1125**

Robert R. Hager, Reno, Nev., and John P. Rupp, Mark I. Levy, Steven J. Rosenbaum, Covington & Burling, Washington, D.C., for plaintiff.

Richard H. Bryan, Atty. Gen., Cr. Div., Carson City, Nev., for Hutchins, Manley, Struve and Bryan.

## ORDER DISMISSING ACTION

BRUCE R. THOMPSON, District Judge.

This action arises out of the detention of plaintiff, Ramon Mendez Houston, a citizen of the Republic of Mexico. Houston was allegedly committed to the sheriff's custody as a material witness pursuant to N.R.S. 178.494 to an offense of first degree murder and was held in custody by officials of Humboldt County, Nevada for over a year and until his release on a writ of habeas corpus issued by the United States District Court. The Amended Complaint alleges that plaintiff was arrested on July 4, 1980, and was not taken before a committing magistrate until July 11, 1980. On that date he was judicially committed as a material witness. The Amended Complaint also alleges that plaintiff's confinement and provisions for his possible release were reviewed by a judicial officer on October 7, 1980, October 24, 1980, and March 16, 1981, the decisions being that he should be continued in custody as a material witness.

The Amended Complaint alleges jurisdiction based on 28 U.S.C. §§ 1331, 1332 and 1343(3) and (4). Violations of 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 1988 are alleged. Also pendent jurisdiction is relied upon with respect to certain state law claims.

The Amended Complaint in substance alleges three basic claims for relief: (1) that plaintiff was confined as a material witness without probable cause and was not released within a reasonable time; (2) that plaintiff was subjected to abuse while incarcerated; and (3) that plaintiff was denied witness fees which were due him upon his release.

The defendants fall into two groups: the "County defendants": Humboldt County, William Macdonald (district attorney), Jack T. Bullock II (deputy district attorney), Frank Weston (sheriff), Donald Fox (deputy sheriff), and Brian Hutchins (special deputy district attorney); and the "state defendants": Richard H. Bryan (attorney general), Larry D. Struve (chief deputy attorney general), Robert Manley (chief criminal deputy attorney general), and Brian Hutchins (deputy attorney general). Both groups of defendants have moved to dismiss the complaint and the motions have, in part, been prosecuted and opposed by reference to documents and affidavits aside the complaint. The motions, therefore, will be treated as motions for summary judgment pursuant to Rule 12(b)(6) Fed.R.Civ.P.

Since the motions to dismiss were filed the action has been settled and dismissed with prejudice as to the county defendants. The action remains pending only as to the state defendants. On January 2, 1981, defendant Brian Hutchins, deputy attorney general, had been designated a special deputy district attorney of Humboldt County in connection with the prosecution of the indictment with respect to which plaintiff was a material witness. The settlement stipulation dismisses the action as to Hutchins only in his capacity as a temporary official of Humboldt County. The state law claims for abuse of plaintiff while confined and for failure to pay witness fees have been settled and dismissed.

In order to state a claim for relief against the remaining state defendants for unlawful confinement, plaintiff must show, among other things, that the wrongful conduct of these defendants was the proximate cause of his detention.

Houston was held in custody pursuant to N.R.S. 178.494 which provides:

Bail for witnesses. If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpena, the magistrate may require him to give bail for his appearance as a witness, in an amount fixed by the magistrate. If the person fails to give bail the magistrate may:

1. Commit him to the custody of a peace officer pending final disposition of the proceeding in which the testimony is needed;

2. Order his release if he has been detained for an unreasonable length of time; and

3. Modify at any time the requirement as to bail.

The constitutionality of this kind of statute has always been affirmed. *See, e.g., Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973). Haste in the production of a person before a committing magistrate is of special importance when the only reason for his detention is as a material witness. With respect to persons accused of crime the fourth amendment requires a reliable determination of probable cause made promptly *after* arrest. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). And an injunction requiring a probable cause hearing no more than 24 hours after arrest has been held "eminently reasonable." *Bernard v. City of Palo Alto,* 699 F.2d 1023, 9th Cir.1983. Accordingly, the detention of plaintiff for approximately six days between his arrest on July 4, 1980 and his commitment by a magistrate on July 11, 1980 was unlawful, barring exceptional circumstances which do not appear in the record before the Court. After the hearing before the magistrate on July 11, 1980, his decision was an intervening and supervening efficient proximate cause of plaintiff's detention which in effect immunized the defendants from further responsibility.

In *Hoffman v. Halden,* 268 F.2d 280 (9th Cir.1959) (overruled in part on other issues, *Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962)), the Court said:

There are various cases which point out that certain acts preliminary to judicial decision or action can not be the basis for a claim under the Civil Rights statutes. These cases are essentially cases on proximate causation. *Whittington v. Johnston,* 5 Cir., 1953, 201 F.2d 810, certiorari denied, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377, often cited, states at page 811:

"It is a non sequitur to say that merely by instituting the lunacy proceeding, the defendants 'caused' plaintiff to be deprived of her right to due process within the meaning of 8 U.S. C.A. § 43. If there was any denial of due process, the efficient cause thereof was the omission of the state probate judge to give notice of the proceeding. That failure is not attributable to these defendants. Whether or not notice should be given is committed by the Alabama statute to the discretion of the probate judge. These defendants had no duty in that behalf. They simply instituted the lunacy proceeding as the Alabama statute authorized them to do, and left the conduct thereof wholly to the discretion of the probate judge whose duty and function it was to give any necessary notice."

With these cases in mind we would reason as follows: In a Civil Rights conspiracy case, the injury and damage must flow from the overt acts. Where the gravamen of the injury complained of is commitment to an institution by court order, this order of the court, right or wrong, is ordinarily the *proximate cause* of the injury. Various preliminary steps occur before the order is made. These preliminary steps may range from such matters as filing of petitions to the various clerical and procedural activities which lead to the order. In the ordinary case, the order is made after a hearing in court or after consideration by the court of the supporting documents and evidence. Therefore, the various preliminary steps would not cause damage unless they could be said to be the proximate cause of the injury. In the usual

**1127**

case, the order of the court would be the proximate cause and the various preliminary steps would be remote causes of any injury from imprisonment or restraint under the court order.

We are not saying that there could not be situations where a judge was so deceived and hoodwinked by proceedings brought before him that certain of these preliminary acts might not raise themselves to the status of a proximate cause of an injury, notwithstanding the intervening order of the court. There might be situations where the action of the court became in substance, merely a conduit for the wrongful action which preceded.

The decision in *Flores v. Pierce,* 617 F.2d 1386 (9th Cir.1980), does not diminish the effectiveness of the principle relied upon in *Hoffman v. Halden.* It is true that the decision of the Department of Alcohol Beverage Control rejected Flores' liquor license application, but the defendant city officials had protested the application and had subjected the plaintiffs to the "rigors of the governmental administrative process" allegedly because they were Mexican-Americans. In fact, the *Flores* case supports the caveat in *Hoffman v. Halden* that there "might be situations where the action of the court became in substance merely a conduit for the wrongful action which preceded."

Nothing of such consequence has been alleged respecting the state defendants. Their complicity is alleged in paragraphs 42 and 43 of the Amended Complaint:

42. At all relevant times, the superiors of defendant Hutchins were defendants Bryan, Struve, and Manley, who, as (respectively) the Attorney General, the Chief Deputy Attorney General, and the Chief Criminal Deputy Attorney General of the State of Nevada, were responsible for the official conduct of defendant Hutchins, for supervising, training, and overseeing defendant Hutchins in the performance of his office, and for establishing, implementing, and enforcing standards, procedures, and practices for the exercise of their own official functions and duties and those of their subordinates. Defendants Bryan, Struve, and Manley failed adequately and properly to carry out and discharge these responsibilities, which resulted in and caused the injuries suffered by plaintiff as alleged herein.

43. Defendants Bullock, MacDonald, Hutchins, Bryan, Struve, and Manley, separately or jointly, had the authority to release plaintiff or to cause him to be released from detention as a material witness.

One difficulty with these allegations is that they simply cannot be true as a matter of law. Nothing that the defendants allegedly did or failed to do could have been a proximate cause of plaintiff's detention after the judicial commitment by a magistrate.

The importance of identifying the true proximate cause of the deprivation in a civil rights case was recently emphasized in the case of *Arnold v. International Business Machines Corporation,* 637 F.2d 1350 (9th Cir.1981), where the court observed:

The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact. *See* W. Prosser, Law of Torts § 41 at 238–39 (4th ed. 1971). Rather, the plaintiff must establish proximate or legal causation. In *Hoffman v. Halden,* 268 F.2d 280 (9th Cir.1959), *overruled in part on other grounds, Cohen v. Norris,* 300 F.2d 24 (9th Cir.1962), we examined the allegations of a deprivation of civil rights arising out of the plaintiff's commitment to a mental institution by court order. We observed that the proximate cause of the plaintiff's injury would ordinarily be the court order, and not the various steps preliminary to the court order. *Hoffman v. Halden, supra,* 268 F.2d at 296. Without the preliminary steps, no court order could have issued, and no commitment could have occurred. Thus, the preliminary steps were a cause in fact of the commitment. Because the defendants in the case were persons involved in those preliminary

steps, we had to determine, in reviewing the trial court's dismissal for failure to state a cause of action, whether the plaintiff had alleged facts sufficient to raise those preliminary steps to the level of proximate cause.

The principle upon which we rely is also followed in false arrest and imprisonment cases. The responsibility of the prosecuting officials terminates after detention pursuant to order of a committing magistrate. *Smith v. Lott,* 73 Idaho 205, 249 P.2d 803 (Idaho 1952); *Anderson v. Foster,* 73 Idaho 340, 252 P.2d 199 (Idaho 1953). *See also, Janus v. United States ex rel. Humphrey,* 38 F.2d 431 (9th Cir.1930); *Nesmith v. Alford,* 318 F.2d 110, 118 footnote 2 (5th Cir. 1963); 32 Am.Jur.2d § 135, p. 197.

■ Inasmuch as defendant Hutchins was not given official status until January 2, 1981 to participate in the prosecution of the murder case, it is obvious that nothing he did or failed to do was a proximate cause of plaintiff's detention. It is also pertinent to observe that the Nevada statutes place upon the district attorney, an elected official of each county, the direct responsibility as the public prosecutor. (N.R.S. 252.080). In instances where he refuses to prosecute, a judge may "in extreme cases" call upon the attorney general to prosecute (N.R.S. 173.065). It is true that the Nevada statutes grant some supervisory powers to the attorney general with respect to district attorneys:

N.R.S. 228.120 Appearance before grand juries; supervision of district attorneys; prosecution of criminal cases. The attorney general may:

2. Exercise supervisory powers over all district attorneys of the state in all matters pertaining to the duties of their offices, and from time to time require of them reports as to the condition of public business entrusted to their charge.

3. Appear in, take exclusive charge of and conduct any prosecution in any court of this state for a violation of any law of this state, when in his opinion it is necessary, or when requested to do so by the governor.

And there are formal procedures to be followed if a district attorney elects to request assistance from the attorney general (N.R.S. 228.130), but even if such a request is made, the law provides:

3. This section shall not be construed as directing or requiring the attorney general to appear in any proceedings mentioned in subsection 2, but in acting upon any such request the attorney general may exercise his discretion, and his judgment in such matters shall be final.

■ The tenor of these statutory provisions is that with respect to the general run of prosecutions in the various counties of Nevada the attorney general of Nevada has no duties and responsibilities. His authority concerning supervision of district attorneys is permissive and discretionary. These statutes cannot be a predicate for imposing civil rights responsibility and liability upon the attorney general and his deputies for actionable misconduct of local officials in relation to criminal prosecutions.

Finally, it should be said that the state defendants are absolutely immune for actions or failures to act within the ambit of whatever prosecutorial responsibilities they may enjoy. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1973); *Harlow & Butterfield v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Briscoe v. Lahue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In consideration of the premises,

IT HEREBY IS ORDERED that the motion for summary judgment is granted with the force and effect that the action entitled above hereby is dismissed with prejudice.