**In re the APPLICATION OF the UNITED STATES FOR A MATERIAL WITNESS WARRANT, Pursuant to 18 U.S.C. § 3144, for John Doe.**

No. 01 M. 1750(MBM).

United States District Court,
S.D. New York.

July 11, 2002.

James F. Comey, United States Attorney for the Southern District of New York, Christopher Morvillo, Christine Chung, Celeste L. Koeleveld, Robin L. Baker, Assistant U.S. Attorneys, New York City.

Neil S. Cartusciello, Drinker, Biddle & Reath, New York City, Attorney for Witness.

## OPINION AND ORDER

MUKASEY, Chief Judge.

John Doe,[1] who was initially in the custody of the Immigration and Naturalization Service in another state and subject to an order of deportation, was transferred to the custody of the Department of Justice pursuant to a material witness warrant issued under 18 U.S.C. § 3144 (2000), in aid of a grand jury subpoena. He has moved to quash the warrant, and asks that the deportation order entered against him be enforced forthwith. Alternatively, he asks that the government be barred from calling him before the grand jury, and that his deposition be taken pursuant to section 3144 and Federal Rule of Criminal Procedure 15(a). He also raises issues relating to the conditions of his detention.

Doe gives three reasons to quash the warrant. He relies principally on the reasoning and holding in *United States v. Awadallah,* 202 F.Supp.2d 55 (S.D.N.Y. 2002), to the effect that that statute does not apply to grand jury witnesses. Second, he contends that the government (i) violated his Fifth Amendment rights when it brought him from another jurisdiction to New York, (ii) was required under section 3144 to take his deposition rather than bring him to New York to appear before a grand jury, and (iii) should be required to take his deposition now. Third, he contends that he does not possess material information, and therefore has not been properly subpoenaed.

For the reasons set forth below, I respectfully decline to follow the reasoning and holding in *Awadallah,* and accordingly deny Doe's motion to quash the subpoena based on that reasoning and holding. Further, as set forth below, Doe's claim that his rights were violated is without merit, and his motion to compel the taking of his deposition is denied. Still further, and also as set forth below, Doe is incorrect when he argues that he does not possess material information. The issues he raises as to the terms of his confinement will be addressed separately after the views of the Bureau of Prisons have been heard.

1. The witness who has filed the current motion was taken into custody pursuant to a warrant issued in aid of a grand jury subpoena, and the docket and the record of all appearances in this matter have been sealed as proceedings ancillary to grand jury proceedings. *See* Fed.R.Crim.P. 6(e)(2), (5) and (6) (setting forth general rule of secrecy and rules for closing of hearings and sealing of records). Accordingly, neither the witness's name nor any identifying facts about him or this matter are set forth in this opinion, except to the extent necessary to treat the legal issues presented.

## I.

### A. Section 3144—Text and Context

The Court in *Awadallah* found 18 U.S.C. § 3144 facially ambiguous, but concluded from its structure and legislative history that it was not intended to apply to grand jury witnesses. The *Awadallah* Court dismissed the analysis of the only appellate case to treat the issue squarely, *Bacon v. United States*, 449 F.2d 933 (9th Cir. 1971)—which found that a predecessor statute did apply to grand jury witnesses—as poorly reasoned dictum. Further, the *Awadallah* Court suggested that if the statute were to be read to permit detention of grand jury witnesses, it would violate the Fourth Amendment.

Prior to *Awadallah*, the only authority bearing directly on the reach of the statute was the statute itself, together with whatever recognized principles were available to interpret it, and *Bacon*. The statute reads as follows:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144.

█ As discussed more fully below, the relevant language in what is now section 3144 was interpreted in *Bacon* to include grand jury witnesses, and that language was reenacted as part of the current statute. A well recognized canon of statutory construction requires that a court deem Congress both to have been aware of such existing appellate authority, and to have intended reenacted language to mean what that authority said it meant. Here, even beyond that interpretive canon, there is explicit evidence that Congress, or at least a relevant committee of Congress and those legislators who were aware of that committee's report, was aware of *Bacon's* holding that material witness warrants include warrants for grand jury witnesses. Further, as discussed more fully below, there is substantial authority that a statute so applied does not offend the Fourth Amendment, and additional authority showing that the statute has been applied for many years to grand jury witnesses. *Awadallah* is notably devoid of any reference to that canon, that evidence, or that authority.[2]

---

**2.** The *Awadallah* Court appears to have decided *sua sponte* that section 3144 does not apply to grand jury proceedings. Awadallah himself did not make that argument, and perforce the government did not have the opportunity to respond to it. The parties' briefs make no reference to it. *See* Notice of Motion and Affirmation of Jesse Berman of 12/2/01; Government's Memorandum in Opposition to Defendant's Motions To Dismiss, Etc.; Defendant's Reply Affirmation of 12/28/01; Letter from Karl Metzger, Esq. to the Court of 1/4/02; Government's Post–Hearing Memorandum in Opposition, Etc.; Defendant's Post–Hearing Reply Memorandum; Government's Post–Hearing Reply Memorandum in Opposition, Etc. Although the *Awadallah* Court remarked that "the government cites *Bacon* seven times for the proposition that its arrest of Awadallah was lawful," *Awadallah*, 202 F.Supp.2d at 71, those citations related to issues other than the one that formed the basis for decision—whether the statute applies to grand jury proceedings.

■ As mentioned, the only appellate case to rule squarely on whether section 3144 should be read to apply to grand jury witnesses is *Bacon*, which held that a predecessor to the current statute did so apply. That predecessor statute, then designated 18 U.S.C. § 3149 (1982), differed from the current statute mainly in its first sentence. Set forth below is the first sentence of that predecessor statute, with the differences from the current statute noted in brackets:

> If it appears by affidavit [rather than "from an affidavit filed by a party"] that the testimony of a person is material in any criminal proceeding [rather than "a criminal proceeding"], and if it is shown that it may become impracticable to secure his presence [rather than "the presence of the person by subpoena"], a judicial officer shall impose conditions of release pursuant to section 3146 [omitting explicit authority to arrest contained in the current statute—"a judicial officer may order the arrest of the person"].

*Compare* 18 U.S.C. § 3149 (1982), *with* 18 U.S.C. § 3144 (2000).

Like the movant here, petitioner in *Bacon* argued that a grand jury proceeding is not a "criminal proceeding" within the meaning of the statute. The *Bacon* Court noted that the enabling statute for the Federal Rules of Criminal Procedure granted to the Supreme Court the authority to prescribe rules pertaining to "*any or all proceedings prior to and including verdict*," *Bacon*, 449 F.2d at 939 (quoting 18 U.S.C. § 3771) (alteration in original) (internal quotation marks omitted), and found that the quoted phrase "reaches far enough to include grand jury investigations," *id.* The Court found it "incongruous to say that a proceeding before the body charged by the Constitution with initiating criminal prosecutions does not amount to a proceeding in a criminal case prior to verdict." *Id.* at 939–40. In support of this conclusion, the Court noted that the protection against self-incrimination in a criminal case had been extended by the Supreme Court to a grand jury proceeding. *Id.* at 940 (citing *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892)).

Further, *Bacon* found that the Supreme Court had "exercised to the fullest" the authority granted in the enabling legislation, based in part on Rule 2, which states that "[t]hese rules are intended to provide for the just determination of *every criminal proceeding.*" *Id.* at 940 (quoting Fed. R.Crim.P. 2) (alteration in original) (internal quotation marks omitted). The Court noted that the rules include the core authority for summoning and protecting the deliberations of grand juries—Rule 6—as well as Rule 17, which governs issuance of subpoenas both for trial and for appearance before a grand jury. *Id.* The Court apparently reasoned that inasmuch as the phrase "criminal proceeding" as used in the Federal Rules of Criminal Procedure includes a grand jury proceeding—because the rules themselves govern such a proceeding—so too would the same phrase in the statute include a grand jury proceeding.

The *Bacon* Court rejected the apparently contrary logic of the majority in *United States v. Thompson*, 319 F.2d 665 (2d Cir. 1963), a case that held, over a dissent by Judge Kaufman, that the statute authorizing the issuance of subpoenas in criminal proceedings to witnesses outside the United States, 28 U.S.C. § 1783, did not apply to subpoenas in grand jury proceedings. Instead, the *Bacon* Court embraced the argument of the dissent in that case "that the courts 'should be hesitant to attribute to Congress an intention to promulgate a statute so designed that federal law enforcement agencies can be frustrated by the mere withdrawal beyond our territorial

limits of individuals whose testimony is indispensable to the securing of a criminal indictment.'" *Bacon*, 449 F.2d at 940 (quoting *Thompson*, 319 F.2d at 671 (Kaufman, J. dissenting)).

The *Bacon* Court concluded that because the Rules of Criminal Procedure as a whole are broad enough to encompass a grand jury proceeding, the phrase "criminal proceeding" in Federal Rule of Criminal Procedure 46(b) (repealed 1972), which permitted a court to fix bail for a material witness,[3] and the same phrase in Section 3149, must include grand jury proceedings as well.

The *Bacon* Court declined to rule on the constitutionality of arrest and detention of material witnesses because the constitutional issue had been presented without citation to any specific constitutional provision or case authority, but rather "in a perfunctory manner, without adequate briefing and argument." *Bacon*, 449 F.2d at 941. However, the Court went on to hold that the government had not demonstrated that it was impracticable to secure Bacon's appearance before a grand jury by subpoena without resort to a warrant for her arrest, and therefore voided the warrant. *Id.* at 944–45.

Thus, the *Bacon* Court reasoned as follows: because the enabling legislation authorized rules that covered grand jury proceedings; because the grand jury is the body authorized by the Constitution to initiate criminal proceedings; because the Supreme Court had extended the Fifth Amendment privilege against self-incrimination to grand jury proceedings; and because the rules themselves—including Rules 2 and 17—showed the Supreme

Court's intention to exercise the Congressional grant of authority to the full; it appeared that former Rule 46(b), and section 3149, both of which governed bail for material witnesses, extended to grand jury proceedings as well. However, although the Court found that statute applied to the witness Bacon, the requirements of the statute were not met because the government had failed to establish that it was impracticable to secure Bacon's attendance before the grand jury simply by use of a subpoena.

Whatever may be one's view of the reasoning in *Bacon*, and of its preference for the dissenting position in *Thompson*,[4] the ruling that the statute applied to grand jury witnesses was decidedly not dictum, as the *Awadallah* court found, 202 F.Supp.2d at 72, but instead necessary in order for the Court to reach the issue of impracticability. If the statute did not authorize issuance of a warrant for the arrest of a grand jury witness, there would have been no occasion for the *Bacon* Court to consider whether the government had made the required showing that it was impracticable to secure petitioner's attendance before the grand jury without such a warrant.

The *Awadallah* Court reasoned as follows in finding that a "criminal proceeding" under section 3144 does not include a grand jury proceeding. Initially, it found the phrase "criminal proceeding" to be one that "may create some uncertainty" and then examined some other features of "[t]he statute's structure [to] clarif[y] any ambiguity inherent in its literal language." *Awadallah*, 202 F.Supp.2d at 62 (quoting

---

3. It was from this Rule that the *Bacon* Court had already deduced the power to issue an arrest warrant (an issue not present here).

4. That preference was validated in 1964 when Congress passed an updated version of sec-

tion 1783 and, without changing the language of the statute, stated its intention that the statute reach "all criminal proceedings, including grand jury proceedings." *See* S.Rep. No. 1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790.

*Castillo v. United States,* 530 U.S. 120, 124, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000)) (internal quotation marks omitted). The statute provides that the factual showing to justify issuance of a warrant in a criminal proceeding appear "from an affidavit filed by a party." 18 U.S.C. § 3144. The Court found that the word "party" "plainly invokes [*sic*] an adversarial process—a proceeding where there is a prosecutor and a defendant," that "there are no parties to a grand jury proceeding," and that "a party to a criminal proceeding does not exist until *after* the grand jury has returned an indictment." *Id.* at 62–63. Thus, the word "party" was taken as evidence that the statute does not apply to grand jury proceedings.

Further, the *Awadallah* Court pointed out that the statute authorizes the detention not of any witnesses but only of "material" witnesses. It then hypothesized that "[i]n the context of a grand jury investigation, it is very difficult, if not impossible, for a judge to determine who is a material witness." *Id.* at 63. This difficulty, said to arise from the secrecy of grand jury deliberations, would necessitate reliance on the word of a prosecutor. "But if a judge abdicates her role by delegating her authority to the government, she reads the materiality requirement out of the statute." *Id.* Thus, the materiality requirement was taken as further evidence that the statute does not apply to grand jury proceedings.

Thereafter, the *Awadallah* Court noted that section 3144 refers to statutes and rules that relate to trial procedures, and found in such references yet more evidence that section 3144 itself does not apply to grand jury proceedings. Thus, section 3144 directs that witnesses be treated "in accordance with section 3142," which deals with bail "pending trial" and directs that the judicial officer consider such factors as "the nature and circum-

stances of the offense charged" and the "evidence against the person" and the "danger ... that would be posed by the person's release." 18 U.S.C. § 3142(a), (g) (2000). Here too, the *Awadallah* Court found an indication that to apply section 3144 to a grand jury proceeding "is an attempt to fit a square peg into a round hole." 202 F.Supp.2d at 64.

Two Federal Rules of Criminal Procedure that relate to section 3144 also were found to confirm that the statute cannot be read to apply to grand jury proceedings. Rule 46, providing that release "[p]rior to [t]rial" is governed by 18 U.S.C. §§ 3142 and 3144, Fed.R.Crim.P. 46(a), was found to indicate that section 3144 applies only to trial witnesses, apparently because the Rule refers only to "release prior to *trial.*" *Awadallah,* 202 F.Supp.2d at 65–66. Rule 15 provides that a deposition of a "prospective witness of a party" may be "taken and preserved for use at trial" and that a witness detained pursuant to section 3144 may move and the court "upon notice to the parties" may direct that his deposition be taken, and that he then be released. Fed.R.Crim.P. 15(a). This Rule, which by its terms appears to apply only to a trial witness, was taken as evidence that section 3144 cannot apply to a grand jury witness. *Id.* at 66.

The inclusion of section 3144 in the Bail Reform Act of 1984, contained in chapter 207 of Title 18, which provides for release of persons pending trial or pending sentence, was also cited as an indication that that section cannot apply to grand jury proceedings. *Id.*

The *Awadallah* Court then undertook a detailed, albeit incomplete, discussion of the legislative history of the statute, beginning with the history of its predecessor, section 3149, *Awadallah,* 202 F.Supp.2d at 67–69, continuing with a description of commentary on that section both before

and after its passage, *id.* at 69–70, and culminating in the history of the Bail Reform Act of 1984, enacted as chapter 1 of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat.1976, 1976 (1984), *id.* at 70–71.

Based on the foregoing reasoning, and a three-and-a-half star tour of the legislative history, the *Awadallah* Court found that the intent of Congress to exclude grand jury proceedings from the reach of section 3144 "could not be clearer." 202 F.Supp.2d at 76.

Although the term "criminal proceeding" in section 3144 presented an ambiguity to both the *Bacon* and the *Awadallah* Courts, *see Bacon*, 449 F.2d at 937; *Awadallah*, 202 F.Supp.2d at 73, it would be difficult to imagine a more comprehensive term that Congress might have used to include not only grand jury proceedings and trials—the only two criminal proceedings considered in *Awadallah* for which testimony might be necessary—but also such proceedings as bail applications and suppression hearings, for which testimony might also be necessary. The statute itself is part of Title 18, which includes provisions that control the summoning, term, duties and reports of grand juries. *See* 18 U.S.C. §§ 3321–3334 (2000). The Federal Rules of Criminal Procedure contain at their beginning a rule informing us that the rules are "intended to provide for the just determination of every criminal proceeding," Fed.R.Crim.P. 2, and include the rule that governs all aspects of grand jury proceedings, Rule 6. They include also Rule 17, which provides for the issuance of subpoenas and is routinely read to include grand jury subpoenas. *See Schwimmer v. United States*, 232 F.2d 855, 860 (8th Cir.1956) ("The term 'criminal proceeding,' within this rule, includes the investigation of a grand jury, since such a body is merely an adjunct or 'appendage' of the court, and the things it does represent an incident or process in the part played by the judicial system in criminal law enforcement.").

The term "criminal proceeding," in other criminal statutes, has been read to include a grand jury proceeding. These include 18 U.S.C. § 3731 (2000), which authorizes a government appeal in a "criminal proceeding," *see, e.g., In re Grand Jury Empanelled Feb. 14, 1978*, 597 F.2d 851, 855–57 (3d Cir.1979), *cited in Payden v. United States (In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985)*, 775 F.2d 499, 502 (2d Cir.1985); and former 18 U.S.C. § 408(e) (current version at 18 U.S.C. § 1073 (2000)), which makes it a crime to travel in interstate or foreign commerce "to avoid giving testimony in any criminal proceedings," *see Hemans v. United States*, 163 F.2d 228, 235–37 (6th Cir.1947).

That is not to say that the phrase "criminal proceeding" has never been read, in other statutes, to exclude grand jury proceedings. However, those statutes, and therefore those cases, do not bear on the statute or the problem at hand. Thus, in *Post v. United States*, 161 U.S. 583, 16 S.Ct. 611, 40 L.Ed. 816 (1896), the Court dealt with a statute that apportioned jurisdiction among divisions of a single federal district, and directed that "all criminal proceedings instituted for the trial of offenses against the laws of the United States ... be brought, had and prosecuted in the division of said district in which such offenses were committed." *Id.* at 585, 16 S.Ct. 611 (internal quotation marks omitted). The statute itself said that it applied to trials; it did not say that it applied to grand jury proceedings. *Thompson*, discussed above at page 290–91, is also distinguishable as dealing with a different statute, and in any event, as noted above at page 291 n. 4, the reading of "criminal proceeding" in that case was legislatively overruled when that statute was reenacted.

Doe invokes the independence of the grand jury to support his claim that grand jury proceedings are not criminal proceedings. He reasons that because the grand jury protects citizens "from the institution of *unfair or unlawful criminal proceedings*, it is necessarily separate from criminal proceedings." Letter from Neil Cartusciello, Esq. to the Court of 6/15/02, at 10 (citing *United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality opinion) (noting that the grand jury's "historical office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens")). The conclusion Doe draws does not follow from the premise he posits. That a grand jury, by voting no true bill, may prevent a matter from going any further than the stage of a grand jury investigation does not, by itself, make that investigation anything other than a criminal investigation, or the grand jury proceeding anything other than a criminal proceeding. One who argues to the contrary might just as plausibly argue that a trial is not a criminal proceeding until a guilty verdict is returned because, until then, the defendant is presumed innocent.

Even assuming *arguendo* that the term "criminal proceeding" is ambiguous, *Awadallah's* resolution of that ambiguity seems to me to be flawed for the following reasons. First, the statute's requirement that a warrant be issued based on "an affidavit filed by a party" does not "plainly invoke[ ]"—or evoke—"an adversarial process—a proceeding where there is a prosecutor and a defendant" because "there are no parties to a grand jury proceeding" and because "a party to a criminal proceeding does not exist until *after* the grand jury has returned an indictment." *Awadallah,* 202 F.Supp.2d at 62. Rather, the word "party" applies just as comfortably to any

party in interest, as the government is in a grand jury proceeding, and as both the government and a defendant are after an indictment has been returned.

*Awadallah's* suggestion that section 3144 cannot apply to grand jury witnesses because it is "very difficult, if not impossible, for a judge to determine who is a material witness" in a grand jury setting, so as to assure that only a witness with material information is subject to the rigors of the statute, and that accepting the government's representation as to materiality constitutes an abdication of the judicial role, 202 F.Supp.2d at 63, is flawed for three reasons. First, three appellate courts—the Ninth Circuit in *Bacon* and two others—have ruled that a court weighing the propriety of a material witness warrant for a grand jury witness should determine materiality based on the representation of the prosecutor, lest grand jury secrecy be compromised. *See Bacon,* 449 F.2d at 943; *In re De Jesus Berrios,* 706 F.2d 355, 358 (1st Cir.1983); *United States v. Oliver,* 683 F.2d 224, 231 (7th Cir.1982).

Second, even if one were to disregard those cases, courts make similar determinations all the time, based on sealed submissions, when deciding whether a subpoena calls for relevant information, whether such information is privileged, and the like. I've done it myself. *See In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993,* 846 F.Supp. 11, 13–14 (S.D.N.Y.1994) (quashing as over-broad a grand jury subpoena calling for production of all computer hard drives and floppy diskettes supplied by corporation to specified officers and employees).

Third, the hypothesized difficulty of the materiality decision can be just as great, or greater, when a court must determine if a trial witness must be detained, because the decision likely will have to be made before the trial begins and thus before it is

possible to fit the witness's testimony into the grid of other evidence. If such a difficulty were to bar enforcement of the material witness statute, then the statute could not apply to anyone, except possibly a witness at a pretrial hearing relating to bail or suppression.

It is also incorrect, I believe, to find, as *Awadallah* did, that the direction in section 3144 that material witnesses be treated in accordance with section 3142, as to bail, and perhaps deposed pursuant to Fed.R.Crim.P. 15, so as to avoid continued confinement when feasible, are textual evidence that section 3144 does not apply to grand jury witnesses. *Awadallah* reasoned that because section 3142, which establishes procedures and lists factors to be applied in setting bail, refers to release "pending trial," 18 U.S.C. § 3142(a), and lists factors such as "the nature and circumstances of the offense charged" and the "evidence against the person" and the "danger ... that would be posed by the person's release," 18 U.S.C. § 3142(g)— factors that are "useful only if there is a defendant—that is, if an offense has been charged and trial is pending," *Awadallah*, 202 F.Supp.2d at 63–64, it follows that section 3144, which refers to section 3142, must relate only to trial witnesses, not to grand jury witnesses. Rather, the common sense reading of section 3144 is that it refers to section 3142 only insofar as that section is applicable to witnesses, in making available such alternatives to incarceration as release on bail or on conditions, in suggesting standards such as risk of flight, likelihood that the person will appear, and danger to the community, and in providing for a detention hearing. Not every provision of section 3142 applies to witnesses, but some do, and those govern.

Instead of applying only those portions of section 3142 that apply to witnesses, which would permit the statute to apply as well to grand jury witnesses as to trial witnesses, *Awadallah* would apply all portions of the section, and require the court to consider such matters as "[t]he nature and circumstances of the offense charged," "the weight of the evidence against the person," and the "nature and seriousness of any danger ... that would be posed by the person's release." *Awadallah*, 202 F.Supp.2d at 63 (quoting section 3142(g)) (internal quotation marks omitted). The *Awadallah* Court thus would require a judge weighing the enforcement of a material witness warrant against a trial witness to weigh the seriousness of the crime charged against *the defendant* and the weight of the evidence against *the defendant* when considering whether to hold the witness. Thus, we are informed, "it makes sense that the more serious the 'offense charged' the more important will be society's interest in obtaining the witness's testimony." *Id.* at 64. "Conversely, when 'the weight of the evidence *against* [the defendant]' is very strong, it will not be as critical to detain the witness." *Id.* (quoting section 3142(g)(1)).

The defects in that reasoning are both textual and practical. Recall that section 3144—the one whose meaning we are trying to figure out—tells us that the court is to "treat the person in accordance with the provisions of section 3142." 18 U.S.C. § 3144 (2000). The only "person" section 3144 directs the court to treat under section 3142 is the witness; to the extent that the provisions of section 3142 necessarily apply to a different "person"—*i.e.*, to a defendant—as they do when they refer to "the weight of the evidence against the person," they are not applicable to a section 3144 decision about whether to release a witness. Section 3144 does not direct the court simply to apply as many provisions of section 3142 as it can, and to fold into an evaluation of the witness's situation an evaluation of the defendant's as well.

The practical defects are readily apparent. The *Awadallah* Court would require a judge to evaluate "the weight of the evidence against the defendant" when deciding whether to detain a material witness, which is likely to occur before trial—*i.e.*, before the court is aware of how the witness's testimony fits in the grid of evidence to be presented at trial. Although a court may evaluate the strength of some evidence—such as wiretaps and admissions by the defendant—before trial, as it must when deciding whether to release a defendant on bail, evaluating the weight of and need for testimonial evidence before trial is at best an imponderable undertaking. Notably, *Awadallah* does not cite any cases that have made the evaluation it says every court must make, and for good reason: there are none. No court has ever read the statute in this fashion.

Section 3144's reference to curtailing confinement by taking a deposition when testimony can "adequately" be secured in that way, pursuant to Rule 15, does not bar application of the statute to grand jury witnesses simply because that procedure is available principally for a trial witness. First, although that remedy would be principally available to a trial witness rather than to a grand jury witness, it does not appear to be exclusively available to a trial witness, as may be seen from Federal Rule of Criminal Procedure 46(g), which imposes the following obligations on the court and on the United States Attorney:

Supervision of Detention Pending Trial. The court shall exercise supervision over the detention of defendants *and witnesses* within the district pending trial for the purpose of eliminating all unnecessary detention. The attorney for the government shall make a biweekly report to the court listing each defendant *and witness* who has been held in custody *pending indictment, arraignment or trial* for a period in excess of ten days. *As to each witness so listed* the attorney

for the government shall make a statement of the reasons *why such witness should not be released with or without the taking of a deposition pursuant to Rule 15(a)* . . . .

Fed.R.Crim.P. 46(g) (emphasis added). That Rule does not appear to limit the required showing to trial witnesses, which suggests that the remedy of testimony by deposition might be available to a grand jury witness when, for example, the grand jury before whom the witness is to testify cannot convene promptly.

Of course, the inability to convene a grand jury promptly, or to arrange a witness's prompt appearance before it, generally will not be the cause of delay in taking the testimony of a grand jury witness as frequently as the inability to start a trial promptly will be the cause of delay in taking the testimony of a trial witness, and so the remedy of a Rule 15 deposition, assuming for a moment that it is available for a grand jury witness, will be far more useful for trial witnesses. However, provision of one remedy principally for one class of witnesses, or even exclusively for that class, does not mean logically that the statute does not cover another class as well.

Federal Rule of Criminal Procedure 46, as we have seen, does not apply exclusively to trial witnesses, notwithstanding the *Awadallah* Court's conclusion that Rule 46(a)'s reference to "[r]elease [p]rior to [t]rial" and to Section 3144 should be taken as a textual clue that Section 3144 cannot apply to grand jury witnesses. 202 F.Supp.2d at 65–66. Even absent the quoted portion of Rule 46(g) above, which plainly applies both to grand jury witnesses and to trial witnesses, the phrase "[r]elease [p]rior to [t]rial" can just as well cover a grand jury witness as a trial witness; a grand jury proceeding takes place prior to trial.

There is no need in this opinion to analyze further the Ninth Circuit's decision in *Bacon* applying the predecessor of section 3144 to grand jury witnesses, or to discuss the criticism of that decision in *Awadallah*, see 202 F.Supp.2d at 71–76, because, even if one were to find the text and context of section 3144 insufficient to discern the intent of Congress, that intent is disclosed in the legislative history of the statute, which includes an explicit reference to *Bacon*. See S.Rep. No. 98–225, at 28 n. 88 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3211. That is to say, there is direct evidence that a relevant Congressional committee, and anyone who read its report, was aware of *Bacon's* holding and also that the new statute would apply to grand jury proceedings. *Id.* Doe deprecates that history, Letter from Neil Cartusciello, Esq. to the Court of 6/15/02, at 15; *Awadallah* does not discuss it at all.

The Report of the Senate Committee on the Judiciary describes section 3144 as follows: "If a person's testimony is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpoena, the government is authorized to take such person into custody." S.Rep. No. 98–225, at 28 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3211 (footnote omitted). A footnote to that sentence reads as follows: "A grand jury investigation is a 'criminal proceeding' within the meaning of this section. *Bacon v. United States*, 449 F.2d 933 (9th Cir.1971)." *Id.* at 28 n. 88, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3211 n. 88.[5]

Generally, when Congress enacts a statute that has been interpreted by the courts, it is "presumed to be aware of ... judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *see also N.Y. Credit Men's Adjustment Bureau, Inc. v. A. Jesse Goldstein & Co.*, 276 F.2d 886, 888–89 (2d Cir.1960) (same). Here, one need not rely solely on the presumption that when Congress re-enacted this statute, it was aware of, and therefore intended to adopt, the holding in *Bacon;* there is direct evidence of that awareness, and thus of that intent, in the committee report above cited.

### B. Constitutional Considerations

■ After dismissing the *Bacon* Court's reasoning as "specious," *Awadallah*, 202 F.Supp.2d at 74, taxing the *Bacon* Court for "ignor[ing] the clear intent of Congress," *id.* at 75, and pronouncing *Bacon's* conclusion that Rule 46 allows detention of grand jury witnesses as deserving of "no respect," *id.*, the *Awadallah* Court chided the Ninth Circuit for refusing, on grounds of insufficient briefing, to perform its duty to decide whether the statute as read in *Bacon* was constitutional. *Id.* at 76.

The *Awadallah* Court said that even if the statute could be interpreted to include grand jury witnesses, such an interpretation would be barred by the canon of statutory construction which holds that a court must, if possible, construe a statute to avoid raising serious constitutional problems. *Id.* at 76–77. The serious constitutional problem discerned by the *Awadallah* Court arises as follows: On the one hand, the Fourth Amendment bars "unreasonable ... seizures," *id.* at 77 (quoting U.S. Const. amend. IV), and, on the other, detention of a grand jury witness is under-

---

**5.** Although the *Awadallah* Court cited this report, and indeed quoted the preceding sentence, 202 F.Supp.2d at 71, it did not mention the quoted sentence or footnote, focusing instead on the fact—as unremarkable as it is

irrelevant—that a great deal of the law review commentary surrounding both section 3144 and its predecessor had to do with trial witnesses. *Id.* at 69–70.

taken in aid of " 'an *ex parte* investigation,' " *id.* (quoting *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)), that " 'may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors,' " *id.* (quoting *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). When the reason for the detention—to permit an appearance before a grand jury—is balanced "against a witness's fundamental right to liberty," such a detention raises the specter of an " 'unreasonable ... seizure.' " *Id.* at 77 (quoting U.S. Const. amend. IV). That is, the *Awadallah* Court appears to have found at least a serious possibility that it is inherently unreasonable to detain a witness for appearance before a grand jury.

There are at least two major flaws in that reasoning. First, as explained immediately below, construing the statute to exclude grand jury proceedings does not avoid the constitutional problem presented by imprisoning someone who is merely a witness and is not accused of a crime, if indeed doing so presents a constitutional problem. Second, there is a substantial body of case law, including but not limited to Supreme Court case law, as set forth below, showing that the constitutional problem discerned by the *Awadallah* court does not exist.

To be sure, among the rules of statutory construction on which courts routinely rely is the one that provides as follows:

[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.... This cardinal principle has its roots in Chief Justice Marshall's opinion for the Court in *Murray v. The Charming Betsy*, 2 Cranch 64, 118, 2 L.Ed. 208 (1804),

and has for so long been applied by this Court that it is beyond debate.

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). However, that rule does not support the result the *Awadallah* Court reached because it does not bear on whether the statute should be applied to all witnesses or only to trial witnesses. Either way, the problem presented by imprisoning someone who is not accused of a crime is present.

To the extent that the *Awadallah* Court may have intended to suggest that grand jury testimony is somehow less important, and therefore that detaining someone for purposes of securing it correspondingly more objectionable, that suggestion is at odds with the Supreme Court's view of the importance of grand jury testimony. *See, e.g., Mandujano*, 425 U.S. at 572, 96 S.Ct. 1768 (plurality opinion) ("In *United States v. Burr*, 25 Fed.Cas. 38, No. 14,962e (C.C.Va.1807), Mr. Chief Justice Marshall drew on English precedents ... long accepted in America as a hornbook proposition: 'The public has a right to every man's evidence.' This Court has repeatedly invoked this fundamental proposition when dealing with the powers of the grand jury." (citation omitted)); *Blair v. United States*, 250 U.S. 273, 281, 39 S.Ct. 468, 63 L.Ed. 979 (1919) ("[I]t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned....")

Because the giving of evidence during the investigative stage of a criminal case imposes no lesser obligation than the giving of trial testimony, the Supreme Court has acknowledged that it is reasonable to detain even a person known to be innocent

in aid of securing that person's testimony. In *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), the Court noted in regard to a person who was interrogated while in custody:

> The duty to disclose knowledge of crime rests upon all citizens. It is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness. This Court never has held that the Fourteenth Amendment prohibits a state from such detention and interrogation of a suspect as under the circumstances appears reasonable and not coercive.

346 U.S. at 184, 73 S.Ct. 1077 (citing Fed. R.Crim.P. 46(b); N.Y.Code Crim.Pro. § 618–b (New York's material witness statute)), *overruled in part by Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). More generally, in a case dealing with whether imprisoned material trial witnesses must be compensated for time spent in jail before the trial begins, the Supreme Court declined in emphatic terms to find that there is a "taking" of property within the meaning of the Fifth Amendment when a material witness is imprisoned, such that "just compensation" must be provided: "[T]he Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed." *Hurtado v. United States*, 410 U.S. 578, 588, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973).[6]

Similarly, the Second Circuit has upheld the admissibility of a confession obtained during detention of a state grand jury witness pursuant to New York's material witness statute, rejecting a claim that the witness "was illegally detained as a material witness, because there was no criminal action or proceeding then pending, as required by § 618–b of the New York Code of Criminal Procedure." *United States ex rel. Allen v. LaVallee*, 411 F.2d 241, 243 (2d Cir.1969). Rejecting both legal and constitutional arguments, the Court cited not only state authority but also one of its own cases, *United States ex rel. Glinton v. Denno*, 339 F.2d 872 (2d Cir.1964), where the Court had rejected a Fourth Amendment claim that detention was unreasonable, and therefore unlawful, because during part of petitioner Glinton's detention the grand jury had been discharged. The *Glinton* Court reasoned that the prosecutor could have kept the grand jury in session, or summoned a new one: "Assuming that Glinton's presence as a material witness was still necessary, this continued detention would not have violated the Fourth Amendment." *Id.* at 876.

The Second Circuit is not alone. *See Allen v. Nix*, 55 F.3d 414, 415 (8th Cir. 1995) (affirming denial of relief to habeas corpus petitioner who claimed that his detention on a state material arrest warrant during murder investigation violated Fourth Amendment rights); *Stone v. Holzberger*, 807 F.Supp. 1325, 1336–37 (S.D.Ohio 1992), *aff'd*, 23 F.3d 408, 1994 WL 175420 (6th Cir.1994) (table) (dismissing claim under 42 U.S.C. § 1983 for denial of constitutional rights based on warrantless arrest and detention under Ohio material witness statute, Ohio Rev.Code §§ 2937.18, 2941.48); *Houston v. Humboldt County*, 561 F.Supp. 1124, 1125 (D.Nev.1983), *aff'd*, 725 F.2d 516 (9th Cir. 1984) (same, under Nevada material witness statute, Nev.Rev.Stat. § 178.494).

---

**6.** Even Justice Brennan's dissent in *Hurtado*, based in part on constitutional considerations, did not question the propriety of imprisoning material witnesses, but maintained that they should be compensated under the statute providing for compensation of witnesses, and that a failure to do so denied those witnesses due process. *Id.* at 591–600, 93 S.Ct. 1157 (Brennan, J., dissenting).

## C. *Section 3144 As Applied*

In view of the language of the statute, its history, and the authority cited above, it is not surprising that courts have routinely applied the statute, and assumed that it could be applied, to grand jury witnesses. *See, e.g., In re Grand Jury Subpoena United States, Koecher,* 755 F.2d 1022, 1024 n. 2 (2d Cir.1985) (witness directed to "remain subject to the warrant of arrest as a material witness" while the case was on remand so that district court could determine whether witness was being held for actual, ongoing grand jury investigation), *vacated as moot,* 475 U.S. 133, 106 S.Ct. 1253, 89 L.Ed.2d 103 (1986); *Arnsberg v. United States,* 757 F.2d 971, 976–77 (9th Cir.1985) (civil action seeking damages resulting from arrest on material witness warrant for grand jury investigation; warrant quashed, but only for failure to show probable cause that it was impracticable to secure witness's presence without arrest); *In re De Jesus Berrios,* 706 F.2d at 357–58 (arrest on material witness warrant for grand jury appearance proper, even if prosecutor later secured order to provide non-testimonial evidence, including lineup and hair sample); *Oliver,* 683 F.2d at 231 (representation as to materiality by Assistant U.S. Attorney sufficient to support arrest on material witness warrant for grand jury witness); *United States v. McVeigh,* 940 F.Supp. 1541, 1562 (D.Colo. 1996) (statements of defendant Terry Nichols not suppressed although made while detained as material grand jury witness on warrant issued based on showing of association with Timothy McVeigh and renunciation of U.S. citizenship); *In re Thornton,* 560 F.Supp. 183, 184 (S.D.N.Y. 1983) (contempt proceeding against grand jury witness arrested on material witness warrant).

Apart from the above cases, it is by now a matter of public record that several material witness warrants have been issued by this and other courts in connection with investigations into the September 11, 2001 attack on this country. *Awadallah* involved one of them; this case involves another.

\* \* \* \* \* \*

Given the broad language of the statute, its legislative history—including particularly that the relevant language of section 3144 was reenacted after *Bacon* was decided and that a relevant committee report made explicit mention of *Bacon,* the substantial body of case law indicating that there is no constitutional impediment to detention of grand jury witnesses, and the unquestioned application of the statute to grand jury witnesses over a period of decades before *Awadallah,* to perceive a Congressional intention that grand jury witnesses be excluded from the reach of section 3144 is to perceive something that is not there. Accordingly, I respectfully decline to follow the reasoning and the holding of *Awadallah.*

## II.

■ Doe argues as well that he was taken into custody in another jurisdiction, and that his Fifth Amendment right to consult with counsel and to apply for bail were violated. He argues also that but for the failure by INS to deport him in timely fashion, he would have been free in another country rather than imprisoned here. Letter from Neil Cartusciello, Esq. to the Court of 6/15/02, at 17–19; Letter from Neil Cartusciello, Esq. to the Court of 6/28/02, at 4–5. He argues that the government was obligated to give him an opportunity to testify by deposition immediately in the location where he was confined initially, pursuant to Fed.R.Crim.P. 15, rather than transferring him instead to New York for appearance before a grand jury. *Id.* For these violations, he would have the warrant quashed.

Alternatively, he argues that even now, the government should be compelled to take his deposition pursuant to Rule 15 rather than summon him before a grand jury. The government asserts that Rule 15 depositions are not available for grand jury witnesses, and in any event that Doe was already in custody in another jurisdiction awaiting execution of an INS deportation order, was not taken into custody by the Justice Department until he reached New York, and was well aware that he was not likely to obtain bail and did not apply for bail even after he had counsel in New York.

Doe's "but for" Fifth Amendment argument—that he would have been deported but for a failure by the INS to act in a timely fashion, and therefore has been denied due process—lacks substance. Doe confuses a condition to an alleged denial of due process rights with a cause of such denial. It bears mention that Doe does not contend that he himself did anything before issuance of the material witness warrant herein to hasten his prompt deportation, such as an action to compel it.

Further, as the government points out, Doe was not an attractive candidate for bail, confined initially as a deportable alien and the subject of a material witness warrant in connection with the investigation of a ghastly attack. He did not request bail during his initial appearance in this Court.

Doe's insistence that his deposition should have been taken, and that it be taken now, is based on that portion of section 3144 directing that a witness not be detained "because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144. The section permits delay in the release of a material witness "for a reasonable period of time until the deposition of the witness

can be taken pursuant to the Federal Rules of Criminal Procedure." *Id.* The reference here is, in particular, to Rule 15, which provides for the taking of a deposition when, "due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial." Fed.R.Crim.P. 15(a). The Rule continues, in part, as follows:

> If a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken. After the deposition has been subscribed the court may discharge the witness.

*Id.* The Rule provides further that the deposition: be taken upon notice to "every party," with the defendant in attendance, Fed.R.Crim.P. 15(b); be conducted in the manner of a civil deposition, including "examination and cross-examination ... such as would be allowed in the trial itself," Fed.R.Crim.P. 15(d); and be used "[a]t the trial or upon any hearing ... if the witness is unavailable," Fed.R.Crim.P. 15(e). It provides as well that objections be stated at the time the deposition is taken. Fed. R.Crim.P. 15(f).

That text, referring as it does to taking a deposition to preserve testimony "for use at trial," FedR.Crim.P. 15(a), to a "written motion of the witness ... upon notice to the parties," *id.*, to the defendant's attendance, Fed.R.Crim.P. 15(b), and to "examination and cross-examination," Fed. R.Crim.P. 15(d), shows that those who drafted the rule contemplated use of the deposition at a trial or in some hearing attended by both parties. On the other hand, just as section 3144 refers to section 3142 as the standard for setting bail for material witnesses, even though several of the provisions of section 3142 plainly apply

only to criminal defendants, see discussion at pages 294–95, *supra,* it is not inconceivable that a deposition in aid of a grand jury proceeding might be taken pursuant to Rule 15, using those provisions of the Rule that would apply.

However, I need not decide whether Rule 15 is elastic enough to authorize a deposition in aid of a grand jury investigation because Doe did not meet any of the requirements set forth in the Rule, and the delay in bringing him before a grand jury has not been shown to be due to the unavailability of a grand jury. Doe did not move for a deposition in the jurisdiction where he was incarcerated earlier while awaiting deportation, nor did he move for one when he appeared initially before me. There is no basis in the Rule or otherwise for imposing on the government the obligation to have taken Doe's deposition on its own motion at either time.

Moreover, Doe seems to regard the deposition as a method of examination separate from and alternative to a grand jury appearance. For example, he would give notice to the person about whom he is alleged to possess information. However, just Rule 15 itself provides explicitly that a deposition is to be used the way trial testimony is to be used—that it *is* trial testimony, although taken before trial—so too would a deposition taken in aid of a grand jury proceeding, assuming that the Rule were read to authorize such a deposition, be the equivalent in all respects of grand jury testimony. For example, there would appear to be no requirement in such a deposition that the witness be accompanied by counsel, inasmuch as a grand jury witness has no right to be accompanied by counsel, although he may leave the grand jury room to consult with counsel. In seeking a deposition as an alternative to an actual appearance before the grand jury, Doe is seeking something that even an expansively read Rule 15 would not permit.

Whatever the contours of a deposition procedure under a hypothetical reading of Rule 15, there is no occasion for such a reading here because even Doe does not contend that an actual grand jury is not available to hear him, and his custodial status assures that he is available to the grand jury. Nor is his detention the result of his inability to comply with a condition of release. There are no conditions of release; Doe has not sought such conditions. That being the case, there is no basis under section 3144, or under Rule 15, for directing a deposition. *Cf. United States v. Kelley,* 36 F.3d 1118, 1125 (D.C.Cir.1994) (listing factors warranting deposition under Rule 15, including unavailability of the witness to testify absent a deposition).

For those reasons, Doe's application to quash the warrant for failure to release him or depose him in another jurisdiction, and alternatively for an order directing his deposition, is denied.

### III.

Doe's final basis for moving to quash the warrant is that the government has failed to establish the materiality of his testimony before the grand jury. He argues that the government has not suggested that he is himself a participant in unlawful activity, but only that he has certain information about another suspected participant. He argues that this information relates in substantial part to that other person's opinions and protected speech, and that such information must not be the subject of compelled disclosure and in any event cannot be material to a grand jury investigation. *See* Letter from Neil Cartusciello, Esq. to the Court of 6/15/02, at 20–21; Letter from Neil Cartusciello, Esq. to the Court of 6/28/02, at 8. Further, he argues

that the government's motive here is to use Doe's testimony to establish a perjury case against him—to lay what is called a "perjury trap"—and that that is not a permissible basis for seeking Doe's grand jury testimony. Doe's argument here suffers from at least four defects, each of them fatal.

■ First, as noted above at page 294, the only appellate authority on the subject reflects that the representation of the United States Attorney as to materiality is sufficient for that requirement to be met as to a grand jury witness. The government has so represented, and that should end the matter.

Even if that did not end the matter, the government has explained in sufficient detail, which need not be set forth here, that Doe appears to have information relating to far more than the other person's political views, and includes whether that other person was involved in providing false documents and other criminal activity.

Further, even if Doe were correct that the principal information he can provide relates to another person's protected speech, that is no basis for quashing the warrant or permitting him to withhold that evidence. The Court of Appeals dealt with this issue in *United States v. Rahman*, 189 F.3d 88 (2d Cir.1999), where evidence of the defendant's protected speeches and writings was introduced to show his motive and intent to act in accordance with the views he expressed. *Id.* at 104.

Abdel Rahman ... protests the Government's use in evidence of his speeches, writings, and preachings that did not in themselves constitute the crimes of solicitation or conspiracy. He is correct that the Government placed in evidence many instances of Abdel Rahman's writings and speeches in which Abdel Rahman expressed his opinions within the protection of the First Amendment. However, while the First Amendment fully protects Abdel Rahman's right to express hostility against the United States, and he may not be prosecuted for so speaking, it does not prevent the use of such speeches or writings in evidence when relevant to prove a pertinent fact in a criminal prosecution. The Government was free to demonstrate Abdel Rahman's resentment and hostility toward the United States in order to show his motive for soliciting and procuring illegal attacks against the United States....

*Id.* at 117–18.

■ Finally, there are no facts to support Doe's claim that the government wishes to use his testimony simply as the basis for a perjury indictment against him. Whatever vitality the "perjury trap" doctrine may have as the basis for dismissing a perjury charge brought after a witness is put before the grand jury solely to establish that charge, "the existence of a legitimate basis for an investigation and for particular questions answered falsely precludes any application of the 'perjury trap' doctrine." *United States v. Regan*, 103 F.3d 1072, 1079 (2d Cir.1997) (citation omitted) (internal quotation marks omitted). That legitimate basis has been well established here. Even if it had not, the proper time to challenge a "perjury trap" is after it has been sprung, when the record is fully developed, not before.

\* \* \* \* \* \*

For the above reasons, Doe's application to quash the warrant, or to compel the taking of his deposition, is denied.

SO ORDERED.